No. 23,407.

M. F. PRICE *et al.*, Partners, under the name of DONALD-RICHARD COMPANY, *Appellants*, v. JOHN SHAY, *Appellee*.

SYLLABUS BY THE COURT.

ORDER FOR MERCHANDISE—*No Fraud Shown in Procuring the Order.* The evidence of defendant considered and held insufficient to sustain a finding that he was induced by the fraudulent conduct of the plaintiffs to sign, without reading, a contract for the purchase of merchandise.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed January 7, 1922. Reversed.

*Arthur Fuller,* and *W. J. True,* both of Pittsburg, for the appellants.
*W. H. Ryan,* of Girard, for the appellee.

The opinion of the court was delivered by

PORTER, J.: John Shay was an "Arcadian" merchant. He was interested in a general merchandise store at the village of Greenbush, in Crawford county, which was managed by his son; and in another

store which he operated himself at Arcadia, in Crawford county. The plaintiffs are partners and carry on their business under the name of Donald-Richard Company, with headquarters at Iowa City, Iowa. Their business is selling to country merchants small stocks of cheap perfumery under a contract by which they agree to furnish the purchaser the use of an attractive show case in which to display the goods.

A traveling salesman of plaintiffs persuaded John Shay to sign an order and contract for a shipment of perfumery for each of his stores and with the agreement that on receipt of the goods he would execute to the plaintiffs two sixty-day notes each for $148.80. When the orders signed by him were received by plaintiffs at their Iowa City office they notified him that the orders were accepted, that the goods had been shipped, and they enclosed in the letter the notes provided for in the contract and requested that he execute and return them. He refused to accept the shipment and wrote plaintiffs that he had bought no goods from them; that the contract did not require him to pay anything until he sold the goods. This lawsuit followed, in which John Shay prevailed. The plaintiffs appeal.

The answer alleged that the defendant was induced to sign the so-called contract by false and fraudulent representations made by the plaintiffs' agent, and that he was not to purchase the goods, but was to take and sell them for the plaintiffs, with the option to return them at the plaintiffs' expense. The answer contained the following statement:

"Defendant says his eyesight was so defective that he was unable to read the writing at the time, and that the agent of the company who prepared the writing, falsely represented that no more was to be included in it than was agreed upon, and said defendant was induced to sign said contract."

On the trial John Shay had the burden of proof, and he testified in substance: That the plaintiffs' agent wanted him to handle the goods on commission and agreed to furnish the show cases to put the goods in, and that he was to pay for them at the end of every three months when he sold the goods. He testified: "I did not read the contract; I relied on his word. . . . He said there wasn't any money to be paid in this matter until the goods were sold. . . . The first time I realized the house thought I bought the goods straight out was when they sent me notes to sign, two or three days after." On cross-examination he testified that he had been in the mercantile business since 1902; that during that time he bought

goods,.gave orders for them, wrote letters concerning them, kept books of his business, remitted money for goods bought and sent orders for goods. He said: "I never saw this man [the agent] before that I know of. He was a stranger to me. I took his word for the contents of the writing. I can read and write and transact business of all kinds. I consider myself capable of transacting business. I took the word of a stranger rather than read the contract. There was but few people in the store, as it was about the noon hour. . . . I signed the contract there; I signed my name four times, two in regard to show cases and two contracts; they were to loan me the show cases." There was not a word in his testimony with reference to his eyesight being defective, or that he was unable to read the writing at the time, or that the salesman represented that there was no more to be included in the contract than was agreed upon. He testified: "I never had any other business transaction with this house nor with this man. . . . I am a little hard of hearing. I do not know whether he knew that or not. I did not misunderstand what he said: I heard what he said. I did not think of the matter until after I got the notes. It was about the noon hour that the man arrived at my store. He was there something like an hour."

In *Deming v. Wallace,* 73 Kan. 291, 85 Pac. 139, it was held that the rule that oral representations or inducements preceding or contemporaneous with the agreement are merged in the writing, is subject to the exception that if the representations amount to fraud which avoids the written contract they are not merged therein, and parol evidence is admissible to show the fraud. In that case the testimony showed that the agents of the plaintiff came to defendant when he was busily engaged with a number of men harvesting in his field, and informed him that in order to complete a loan which they had negotiated for him, it was necessary to execute new papers which they had prepared; that the notary they had brought with them was sick at defendant's house and they urged him to attend to the matter at once. Relying upon the representations of the agents that the papers were all exactly the same. as the ones he had previously executed, he and his wife signed without reading them.

The statement in the answer that John Shay's eyesight was so defective that he was unable to read the writing and that the

plaintiffs' agent who prepared the instrument falsely represented that no more was to be included in it than was agreed upon, thereby inducing defendant to sign the instrument, was sufficient, at least, against a motion in the nature of a demurrer to bring the case within the exception to the general rule respecting written contracts; and if the facts pleaded had been established by any evidence the case would have come within the doctrine upon which *Deming v. Wallace* and kindred cases rest. But nothing was said in John Shay's testimony about his eyesight being defective or that he was unable to read the writing for any reason, or that the salesman urged him to sign the contract without reading it or stated that it included only what had been orally agreed upon. We have, therefore, a plain case where the evidence relied upon goes no further than to show that the defendant's understanding of what the contract was merely differed from the terms of the contract. Of course, it was defendant's duty to learn and to know the contents of the contract before he executed it.

"To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible. . . . If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." (6 R. C. L. 624, 625; followed and approved in *Burns v. Spiker,* 109 Kan. 22, 202 Pac. 370.)

While, as we have seen, one of the purposes of the rule making incompetent parol evidence to contradict a written instrument is to remove the temptation and possibility of perjury which would be afforded if parol evidence was admissible, doubtless the main purpose men usually have for entering into a written contract is to make certain what its terms are, and avoid the possibility of subsequent disputes based upon the claim of either party to a different understanding because of something said in the negotiations leading up to the making of the contract.

The only authority cited in the brief for defendant is *Shook v.*

*Manufacturing Co.,* 75 Kan. 301, 89 Pac. 653.  There it was ruled in the syllabus:

"Where inquiry as to the contents of a written contract is lulled by fraud and deceit, and one party is induced to sign the contract by the false representations of the other that it contains the provisions agreed upon, when in fact it does not, the party who procures the signature by fraud will not be entitled to enforce such contract, although the one who signed it did so without reading it or having it read to him."

The answer was apparently drawn to fit the Shook case.  There the defendant was unable to read without his spectacles which were not at hand; it was alleged that it was dark in the room at the time; that plaintiff's agent was urging haste as he had to catch a train; that the defendant was very busy, and the agent represented the contract to be as verbally agreed upon; and that relying upon these statements the defendant signed without reading.  On the day after signing it, the defendant examined it and found it was not as represented and immediately wrote to the plaintiffs cancelling the pretended order and stating the facts.  It was held that the answer sufficiently alleged the fraud in the execution of the contract.  There was no evidence in the present case to support a contention that inquiry by John Shay was lulled by fraud and deceit; and the claim in the answer that he was unable to read without his glasses was abandoned at the trial.  His testimony gives no hint or suggestion that he acted in haste or that he was busy about other matters.  He said that his daughter did some of the work for him and that she was in the store during the noon hour, after the contract had been signed, but before the salesman left, and that he did not ask her to read the contract, although she knew something about the transaction.  His frank statement of what occurred established that he had no excuse for not reading the contract before signing it.

The verdict and judgment could only be sustained by a decision which would not be followed as a precedent for the reason that it would tend to destroy the effect of written instruments generally; would permit one who signs a note, mortgage, lease or deed, without having read it, to avoid his contract by proof of that fact and by testifying that the terms of the instrument differed from his understanding of what the agreement was.

And so John Shay must pay for the perfumery; judgment must be ordered against him.  So far as the money is concerned, it was probably "lost when the contract was signed."  As for the lawsuit, John

Shay will be entitled to the satisfaction of knowing that he loses that principally because, on the witness stand, he told frankly and honestly his story of how he came to sign the contract; never shaded a fact or colored a circumstance in order to distort its meaning—regardless of the effect it might have upon his side of the controversy. It often happens that it is better to lose than to win a lawsuit.

Reversed and judgment ordered for plaintiffs.