No. 25,150.

THE WESTERN TRACTOR EQUIPMENT COMPANY, *Appellee*, v.
FRANK W. AYERS, *Appellant*.

### SYLLABUS BY THE COURT.

WRITTEN ORDER FOR MERCHANDISE—*Goods Shipped—Refusal to Accept—No
Defense Pleaded—Oral Evidence to Vary Contract Inadmissible.* The fact
that one who gives a written order for the purchase of goods is at the time
busy because of waiting customers is not a sufficient justification for his
signing it without reading, in reliance upon the statement of the salesman
that it contains various oral agreements concerning making the purchase
contingent upon acts to be done by the vendor, where the writing is so brief
that a mere glance would disclose that it did not contain anything beyond
the date, the names of the parties, the description and price of the prop-
erty, and a direction to ship by car to the point named, at a stated time.

Appeal from Rawlins district court; WILLARD SIMMONS, judge. Opinion filed
April 5, 1924. Affirmed.

*Dempster Scott,* and *C. E. Scott,* both of Atwood, for the appellant.
*Earl E. Howard,* of Atwood, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Western Tractor Equipment Company sued
Frank W. Ayers for damages resulting from his refusal to accept
two threshers for which he had given a written order. He answered
undertaking to set out a breach of the contract by the plaintiff and
fraud in procuring its execution. A demurrer to the answer was
sustained and the defendant appeals.

The order was obviously made by filling in the blanks of a
printed form. It read:

"WESTERN TRACTOR & EQUIPMENT CO.
KANSAS CITY, Mo.

No. ..................                          Date 3/
Charge to Frank W. Ayers                       Ship to   Do
City or Town, Ludell, Ks.                      City or Town   Do
                                               How   Car
Terms   S. D. B. L.                            When, June 1st, 1921
2   26x46 Woods Bros. All Steel Threshers complete with weigher Feeder and
Blower                          1450                        $2900.00
                              Less 20%

    B. H. ISSETT,                              FRANK W. AYERS,
       Salesman.                                        Dealer."

49—115 KAN.

1. The pleadings showed that the threshers were shipped from Kansas City, June 4, 1921, and the defendant claims that the three days' delay in shipment was such a breach of the contract as to justify his rejection of the machines. While the time of delivery named in a contract of sale is ordinarily of the essence of the agreement (35 Cyc. 175; Williston on Sales, § 189) a delay of three days —from June 1 to June 4—in the shipment of threshers from Kansas City to a point in Kansas, in the absence of a showing of special circumstances affecting the matter, can not be said to constitute a failure of substantial performance, especially when the refusal of the buyer to receive the property is also placed by him on the ground of fraud.

2. The allegations relied upon as setting out fraud may be thus summarized:

The plaintiff's agent as an inducement for the defendant to order the machines orally agreed that he would come to Ludell and assist in selling the machines, in order that they might be sold before their shipment; and that the defendant would be notified before shipment so that if they had not been able to find purchasers for them the order could be cancelled by wire. The agent then prepared a memorandum stating to the defendant that "it contained the agreements which had been made between" them. The defendant was running a garage and was a very busy man. He was busy waiting on customers while the agent was preparing the memorandum. When it was prepared the agent asked him to sign it "stating that the same was a memorandum of their agreement." Several customers were waiting to receive the defendant's attention and the defendant was in a hurry and "relied upon the representations of the said agent of plaintiff that he would come to Ludell and assist defendant in selling said machines before they were shipped, and that if they failed to sell the same that the order could be cancelled so they would not be shipped; and that plaintiffs would notify defendant in ample time before shipping so that there would be time to cancel the order; and defendant relied upon said agent's statement that said memorandum contained said oral agreements, and said defendant did not read said memorandum but in haste signed the same where he was shown to sign by said agent . . . all of the representations made by plaintiff's agent, as set out in this defense were false and fraudulent and were falsely and fraudulently made by plaintiff's

agent for the purpose of inducing the said defendant to sign said memorandum; and . . . this defendant's signature to said memorandum was procured by the fraud and misrepresentations of the said plaintiff's agent, and said defendant relied upon and believed the statement of said agent that said memorandum contained their agreement." The allegations of the agent's promise that certain things should be done and of the defendant's reliance upon these promises do not in themselves state a defense. To hold otherwise would be to allow the terms of the written contract to be varied by evidence of prior oral agreements. (*Stevens v. Inch,* 98 Kan. 306, 158 Pac. 43.) The sufficiency of the defense pleaded turns upon the allegations that the defendant was in a hurry and that the agent represented that the memorandum "contained the agreements which had been made between them." There is a difference of judicial opinion as to the right of one who has signed a contract without reading it to effectively resist its enforcement on the ground that he relied upon false statements made by the other party as to its contents. The later tendency is toward a more liberal treatment of the person claiming to have been defrauded. (6 R. C. L. 632-635; note L. R. A. 1917 F 637.) This court has repeatedly announced and applied the rule that "A recognized exception to the rule that a party is held to know and be bound by the provisions of a writing which he signs is where one party procures another to execute the writing by falsely and fraudulently representing that it contains the stipulations previously agreed upon when in fact it does not and where the party signing the writing relies upon the faith of these representations and is thereby induced to omit the reading of the writing which he signs." (*Tanton v. Martin,* 80 Kan. 22, 101 Pac. 461, syl. ¶ 1.) The fact that misrepresentations have been made as to the contents of the paper to be signed will not always, however, form a sufficient basis for relieving the signer from liability, the matter being affected in this regard by the attendant circumstances. (*Railway Co. v. Coltrane,* 80 Kan. 317, 102 Pac. 835.) The plaintiff cites *Read v. Dodsworth,* 95 Kan. 117, 147 Pac. 799, and *Donald-Richard Co. v. Shay,* 110 Kan. 351, 203 Pac. 1105, as inconsistent with such cases as *Tanton v. Martin,* supra. In the first named case fraud was not expressly pleaded and the misrepresentation relied upon concerned the legal effect of the language of the contract rather than what the language actually was. In the second the

signer of the writing did not testify that the salesman had told him it included only what had been orally agreed upon, and there was no evidence of his having been lulled into a sense of security by deceit. If the defendant in the present instance is bound by the written contract which he signed, notwithstanding the representation made to him that it contained the agreements which had been orally made, it must be because of the character of the instrument. It was so short and simple that its contents could be taken in at a glance. The defendant was under no disability nor was his opportunity to inspect it hampered in any way save that he was in a hurry, having customers to wait upon. His complaint is not that the writing contained other stipulations than those represented, but that it omitted matters it was represented as containing. To accept the statement of a salesman that an elaborate piece of writing or printing contains certain provisions, rather than take time in a busy period to read it through, is a very different thing from accepting in such circumstances a statement that a number of distinct agreements are embodied in a mere memorandum containing only the names and addresses of the parties, the description and price of the articles ordered and the date and method of shipment, the contents of which could be learned by a moment's inspection. The time taken to attach his signature was abundant to enable the defendant to see that the writing could not contain anything substantial beyond the bare ordering of the machines. There being no fiduciary relation involved and the sole reason given by the defendant for taking the agent's word and omitting to read the instrument being that he was busy because of waiting customers, we think the situation is more analogous to that presented in the Coltrane case than to those in which the failure to read the contract has been held to be excusable, and that the defense pleaded is insufficient.

The judgment is affirmed.