No. 27,170.

Frank E. Furst and Fred G. Thomas, Partners, etc., *Appellants*, v.
H. W. Hartwick et al., *Defendants* (E. E. Hoard, Adolph
Nordgren and John S. White, *Appellees*).

### SYLLABUS BY THE COURT.

Agency — *Proof of Relation* — *Waiver of Objections to Instructions* — *Suffi-
ciency of Evidence.* At' the close of the evidence in a trial by jury of
issues of agency and fraud, a motion for judgment for plaintiffs was made,
and was denied. The court instructed the jury, the' jury returned a verdict
for defendants, a motion for new trial was made and was denied, judgment
was rendered for defendants, and plaintiffs appealed. In this court, plain-
tiffs waive the motion for new trial, and stand on their motion for judgment.
*Held,* the instructions to the jury are the law of the case, and the evidence,
considered in the light of the instructions, is sufficient to require affirmance
of the judgment.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent,
judge. Opinion filed February 12, 1927. Affirmed.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for
the appellants.

*E. C. Wilcox, J. H. Wilcox* and *Myrtle Youngberg,* all of Anthony, for
appellees Hoard and Nordgren; *H. W. Hart, Glenn Porter* and *Enos E. Hook,*
all of Wichita, for appellee White.

The opinion of the court was delivered by

Burch, J.: The action was one to recover from persons who
guaranteed payment of another's account. Plaintiffs were defeated,
and appeal.

Plaintiffs sold goods to Hartwick under a written contract, be-
neath which, on the same sheet, appeared a contract of guaranty
which was signed by Hoard, Nordgren and White. The guarantors
defended on the ground their signatures were procured by fraud.
After a trial, which occurred in 1924, judgment was rendered in
favor of plaintiffs, against Hartwick. A new trial of the issue of
fraud was granted as to the guarantors. At a trial which occurred
in 1925 the jury disagreed. At a trial which occurred in April, 1926,
defendants introduced their evidence, and rested. A demurrer to
the evidence was interposed, and overruled. Plaintiffs then intro-

Appeal and Error, 4 C. J. pp. 851 n. 53, 852 n. 56. Courts, 15 C. J. p. 962
n. 36.

duced evidence, defendants introduced evidence in rebuttal, and all parties rested. Plaintiffs then moved for judgment in their favor. The motion was denied, the court instructed the jury, and the jury returned a verdict for defendants, together with the following special findings:

"1. Do you find that the defendant, Hoard, was deceived by anyone as to the character of the guaranty signed by him? A. Yes.

"2. If your answer to No. 1 is in the affirmative, state whether the person who so deceived Hoard was an agent of the plaintiff. A. Yes.

"3. If your answer to No. 1 is in the affirmative, was the witness A. V. Wolfe the man? A. Yes.

"4. Do you find that the defendant, Nordgren, was deceived by anyone as to the character of the guaranty signed by him? A. We do, yes.

"5. If your answer to No. 4 is in the affirmative, state whether the person who so deceived Nordgren was an agent of the plaintiff. A. Yes.

"6. If your answer to No. 4 is in the affirmative, was the witness A. V. Wolfe the man? A. Yes.

"7. If you find that any agent of the plaintiff deceived either Hoard or Nordgren in the respects charged, what was said agent's name? A. A. V. Wolfe.

"8. Under the circumstances of this case, was it apparent at a glance to anyone signing on the lines indicated for the guarantors, that the document was not a mere recommendation? A. No."

Plaintiffs filed a motion for new trial, which was denied, and the judgment appealed from was rendered. Plaintiffs waive the motion for new trial, and stand on their demurrer to the evidence and their motion for judgment. Evidence introduced after the demurrer was overruled may have contributed materially to the evidence from which the jury drew its inferences. Therefore the question is whether the motion for judgment should have been sustained. Waiver of the motion for new trial leaves the instructions to the jury, whether correct or incorrect, the law of the case, and the question must be determined in the light of the instructions.

Plaintiffs, whose home office was at Freeport, Ill., were distributors of "McNess Sanitary Preparations," consisting of extracts, toilet goods, liniments, and home remedies. Hartwick, who resided at Anthony, Kan., was a "salesman" who peddled the preparations from a "medicine wagon." Previous to April 23, 1915, he had been purchasing goods on credit, under a contract similar to the contract sued on. On April 23, 1915, plaintiffs wrote a letter to Hartwick, stating his account had grown so large a new contract with an extra guarantor or two was desired. The contract and the guaranty

which were subsequently signed were inclosed for execution. Hartwick did not respond. A week or ten days later a man who may be designated as Mr. X appeared at Hartwick's place of business and inquired why the new contract had not been filled out. Mr. X had with him a statement of Hartwick's account with plaintiffs, which was checked over, and he went to Hartwick's stock room and checked over the stock there. He also had with him other contracts similar to Hartwick's contract, and some "literature." The contract under which Hartwick was operating, and the new contract, provided that plaintiffs should furnish blanks, advertising matter, and other printed matter connected with the business of selling the preparations. Hartwick handed the new contract, which apparently he had signed, to Mr. X, who then took up the subject of procuring guarantors. Hartwick and Mr. X went to see Hoard, and Mr. X induced Hoard to sign as a guarantor. Nordgren was present, and Virgil Croft, who was working for Hoard, was present. Afterwards, Mr. X induced Nordgren to sign as a guarantor. After the signatures of Hoard and Nordgren had been procured, Mr. X gave the instrument to Hartwick, and told him to send it to White for his signature as a guarantor. White resided at Greenville, Ill. Hartwick sent the instrument to White, who signed as guarantor, and returned the instrument to Hartwick, who sent it to the company.

It is clear the jury were authorized to believe that somebody appeared at Hartwick's place of business on the day the guaranty was signed by Hoard and Nordgren, who knew the contract with guaranty attached which plaintiffs had sent to Hartwick had not been executed and returned to plaintiffs, who had with him a statement of Hartwick's account with plaintiffs, and papers and printed matter which an agent of the company checking up salemen might possess, who did such business with Hartwick as an agent of the company might do, and who, so far as the evidence disclosed, had no business at Anthony, unless he were an agent of the company calling upon Hartwick for the purpose of procuring a new contract and guaranty. It is elementary that agency may not be established by proof that a person pretended to be agent of another or acted as such agent. An inference of authority must be derived from facts for which the principal was responsible. The court instructed the jury, however, that it was not necessary agency be established by direct testimony, and that facts and circumstances might be taken into consideration, including possession by the assumed agent of documents belonging

to the principal, and including the fact that the assumed agent was in possession of information which he must have received from the principal.

Facts and circumstances are to be considered in the light of human experience, and under the court's instructions, the jury might reasonably conclude Mr. X could not know Hartwick had failed to forward to plaintiffs, duly executed, a contract with guaranty attached, sent to Hartwick for execution, would not have with him a statement of Hartwick's account with plaintiffs concerning which execution of the contract and guaranty was desired, and would not have with him other contracts of the same character, unless plaintiffs put him in possession of the information and the documents. This being true, plaintiffs would be responsible for placing Mr. X. in a position which enabled him to present himself to Hartwick as one who, according to experience and business usage, possessed authority from plaintiffs respecting Hartwick's account, and respecting the subject about which he was informed. The result being reasonably foreseeable, and Mr. X. having been dealt with as plaintiffs' agent, plaintiffs would not be in position to deny the agency.

Plaintiffs meet the conclusion just stated by denying the existence of any Mr. X. They say the story of his appearance was a fabrication. If so, Hartwick and Hoard and Nordgren and Croft must have conspired to commit perjury. Whether they did so was a question for the jury. The district court was not authorized to sustain a demurrer to their testimony, or to render judgment for plaintiffs in the face of their testimony.

The evidence favorable to Hoard and Nordgren was that Mr. X procured their signatures by representing the guaranty was merely a recommendation. We are not concerned in this appeal with Mr. X's authority. The court instructed the jury that, if they found he was plaintiffs' agent, plaintiffs were bound by his acts and conduct. A contention that the rule announced in *Donald-Richard Co. v. Shay*, 110 Kan. 351, 203 Pac. 1105, should be applied to Hoard, cannot be sustained. An instruction to the jury made White's liability depend on liability of Hoard and Nordgren, and as indicated, the instructions are not subject to review.

There was evidence identifying Mr. X with A. V. Wolfe, who was named in the findings of the jury as plaintiffs' agent. Mr. Furst testified the business of plaintiffs extended over practically all of the central states, including Kansas. A. V. Wolfe was plaintiffs'

field man, whose business consisted in checking up dealers. In 1915, the year the guaranty was signed, Wolfe was the only agent of plaintiffs who did that work. Wolfe was a witness at the trial, and testified he was not in Kansas in the year 1915. Hartwick testified the Mr. Wolfe in the court room was not the same man as the person who has been designated in this opinion as Mr. X. Hartwick had given testimony at the second trial which identified Wolfe with Mr. X. This testimony was read to him, and was admitted by him to be correct. His testimony is too long to be quoted, and cannot be summarized to present its double aspect of showing that Wolfe and Mr. X were the same person and were different persons. What the testimony proved was a question for the jury. (*Acker v. Norman,* 72 Kan. 586, 84 Pac. 531.) The court was not authorized to determine the question on motion for judgment.

A slight discrepancy appeared between Wolfe's testimony at the second trial and his testimony at the last trial. At the last trial he gave some testimony which was flatly contradicted by a witness for defendants. What his demeanor may have been while on the witness stand this court cannot know. It is clear the jury did not believe him. The jury were abundantly justified in believing that some one purporting to be an agent for plaintiffs was present when the contract of guaranty was signed. If any agent of plaintiffs was present, Furst's testimony made it certain Wolfe was that agent.

Manifestly this court may not declare, as a matter of law, that there was no evidence to go to the jury, and the judgment of the district court is affirmed.