## COX v. PABST BREWING CO. et al.
### No. 2413.

Circuit Court of Appeals, Tenth Circuit.
May 18, 1942.

Glenn Porter, of Wichita, Kan. (Getto McDonald, Dwight S. Wallace, William Tinker, and Arthur W. Skaer, Jr., all of Wichita, Kan., and M. J. Donnelly and John E. O'Hora, both of Chicago, Ill., on the brief), for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By a suit filed in the state court, and removed to the United States District Court of Kansas, the plaintiff, John H. Cox (appellant here), sought to reform two written contracts to express the true intentions of the parties in accordance with two alleged antecedent oral contracts, and damages for the breach of the contracts as reformed. The trial court denied reformation, based upon the appellant's proof, and damages for breach of the written contracts as pleaded.

The facts which tend to support the allegations of the petition are substantially as follows: The Pabst Brewing Company (one of the appellees here) is engaged in the manufacture of beer and ale. The Pabst Sales Company (one of the appellees here) is a wholly owned and controlled subsidiary of the Pabst Brewing Company, and is engaged exclusively in the promotion and sale of products manufactured by the Pabst Brewing Company. On or about the first of March, 1939, Walter B. Hambly, an employee and representative of the Pabst Sales Company, approached the appellant, Cox, concerning a distributorship for its products in certain designated counties in the State of Kansas. After considerable negotiations, Cox stated that he would not be interested in a distributorship unless he was assured of a contract for a period of not less than two years, whereupon Hambly agreed and stated that a contract would be prepared by his employer containing all of the terms and conditions they had discussed and agreed upon, and specifically that the contract would provide that the distributorship would continue for a period of two years. Soon thereafter Cox purchased a stock of Pabst products and commenced its distribution in the counties agreed upon.

Thereafter on or about March 24, 1939, a written contract in triplicate was prepared by the Pabst Sales Company and delivered to Cox for his signature. Relying upon the representations of Hambly to the effect that the written contract embraced all of

Hal M. Black, of Wichita, Kan. (I. H. Stearns, of Wichita, Kan., on the brief), for appellant.

the terms and conditions heretofore discussed and agreed upon by Hambly and Cox, and that the contract provided that the distributorship would continue for a period of two years, Cox signed the contract in triplicate. The same was witnessed by his office manager, Kirkendall, returned to the Pabst Sales Company, by them duly executed and returned to Cox, who placed it in his files without further attention. Cox continued to act as distributor for certain named counties until June, 1939, when Hambly suggested that additional counties be added to the territory serviced by Cox. Again Cox stated that he did not wish to assume additional territory unless it could be agreed that the distributorship would continue for a period of two years, whereupon Hambly agreed that the terms and conditions would be in accordance with the original oral agreement, and that a contract covering these terms and conditions would be prepared and submitted to Cox for his signature.

In due course and on June 29, 1939, Hambly delivered to Cox a proposed contract in triplicate stating that it was identical with the other contract except as to counties, and in conformity with the original oral agreement. Again, relying upon the representations of Hambly that the contract provided that he should have the distributorship in the named counties for a period of two years, unless cancelled by mutual agreement, and "being very busy at the time, signed the same without reading it and returned it to the Pabst Sales Company." This contract was duly executed by the Pabst Sales Company and returned to Cox, who placed it in his files without reading it. The respective contracts mentioned, and attached to the petition, provide among other things, that either party may cancel or terminate the contracts at any time upon three days written notice. Each of the said contracts also provide next above the signatures of the parties that the contract supersedes and cancels all previous agreements; that the contract or agreement embodies the terms of the parties affecting or relating to the sale of beer and ale by the seller (Pabst Sales Company) to the distributor; and that neither this contract nor any of its terms may be changed or modified except in writing duly approved by an officer of the seller, and that no agent of the seller, except a proper officer thereof, has any authority to contract for the sale of or bind the seller upon any contract whatsoever. The latter contract superseded the former contract.

On October 9, 1939, the Pabst Sales Company notified Cox in writing that the contract of June 29, 1939, would be cancelled as of October 13, 1939, and the relationship between the parties was terminated as of that date.

Cox pleads the oral agreement between himself and Hambly as the general agent of the Pabst Brewing Company and its wholly owned and controlled subsidiary the Pabst Sales Company. He contends that he was induced to become the distributor for the Pabst products, and incurred expenses incident to its promotion and sale in the allotted territory, on the representations and agreement that the relationship between the parties would continue for a period of not less than two years, unless cancelled by mutual consent, and that a written contract would be prepared and submitted to him in conformity with their agreement. He further contends that he was induced to sign the two written contracts without reading them by the false and fraudulent representations of Hambly, to the effect that the said contracts were in conformity with their oral agreement, including a provision that the contract would continue for a period of two years.

The Pabst Brewing Company denies that Hambly was its agent or employee, or that the said Hambly was authorized to contract for it either orally or in writing, or that it did at any time enter into an oral or written agreement with Cox concerning the sale of Pabst products in any territory.

The Pabst Sales Company admits that Hambly was its employee and sales representative; admits that it entered into the written contracts as alleged, but says in substance that the written contracts were submitted to Cox, signed by him, and returned to it for execution; that in each instance, the contracts were duly executed by it, one of which was returned to Cox; that the said contracts embraced the entire agreement between the parties and provided for cancellation of the agreement upon three days notice; that no one except a proper officer was authorized to make a contract; that Hambly had no authority to enter into any contract, either oral or written, and that it had no notice of the alleged oral contract, and is not liable thereunder.

By this action, Cox has invoked the equitable processes of the court, seeking reformation of the written contracts to conform to the oral agreements as alleged, and for judgment in the sum of $45,685 based upon expenses incurred and time devoted to the business.

The trial court found the facts substantially as herein narrated. Specifically, the trial court found that Hambly entered into the oral agreements with Cox substantially as alleged; that Hambly was the agent of the Pabst Sales Company, but was not authorized to make either an oral or written contract with a distributor; and that neither the Pabst Sales Company or its officers or directors knew of the oral agreement between Hambly and Cox. The court also found that the two written contracts submitted to Cox and signed by him contained all of the terms and conditions of the agreement between Cox and the Pabst Sales Company; that the limitations upon the authority of Hambly to contract with Cox were contained in the agreement just above his signature affixed to the contract; that the plaintiff was negligent in signing the contract without reading the same, and ascertaining the terms and conditions thereof. Based on these facts, the court concluded that although Hambly was the agent of the Pabst Sales Company, he had no authority to enter into an oral or written contract with Cox, or to bind his principal thereto. The court further held that Hambly was not an agent, servant, or employee of the Pabst Brewing Company, and that the Pabst Brewing Company did not enter into any contract, either oral or written, with Cox; that the Pabst Brewing Company and the Pabst Sales Company were separate corporations, and therefore no privity between Cox and Pabst Brewing Company. The court denied reformation of the contracts and rendered judgment for both of the defendants, based upon the written contracts as pleaded.

█ In order to afford relief against the harshness of the general rule that a party is held to know and to be bound by the provisions of the writing which he signs, the courts now recognize the general rule based upon sound equitable considerations, that liability on written instruments may be avoided, or such written instruments may be reformed and enforced in accordance with an antecedent oral agreement, when it is made to appear that the party executing the written agreement without reading the same was deceptively or fraudulently induced to believe that the written agreement contained all of the terms and conditions of the antecedent oral agreement, and when the circumstances justify a belief in the integrity of the promises made to him that such written contract does in fact represent the true antecedent oral agreement between the parties. Nor will the negligence of the defrauded party excuse the fraud, unless it is gross and palpable. Kansas adheres to this rule. Shook v. Puritan Manufacturing Co., 75 Kan. 301, 89 P. 653, 8 L.R.A.,N.S., 1043; Cox v. Beard, 75 Kan. 369, 89 P. 671; Tanton v. Martin, 80 Kan. 22, 101 P. 461; Vermont Farm Machinery Company v. Ash, 23 N.M. 647, 170 P. 741; Western Tractor Equipment Company v. Ayers, 115 Kan. 769, 225 P. 115; White Sewing Machine Company v. Edwards, 120 Kan. 151, 242 P. 129; American National Bank v. Marshall, 122 Kan. 793, 253 P. 214; Lumbar v. Erickson, 126 Kan. 31, 266 P. 737; Dusbabek v. Bowers, 173 Okl. 53, 43 P.2d 97; Allis Chalmers Manufacturing Company v. Byers, 184 Okl. 475, 88 P.2d 368; Barron G. Collier, Inc., v. Connelley, Tex.Civ.App., 116 S.W.2d 849, affirmed 134 Tex. 569, 137 S.W.2d 14; 17 C.J.S., Contracts, § 137, p. 487, § 138, p. 491; 53 C.J., § 65, p. 949, § 66, p. 950, Sec. 67 p. 952; see annotation 45 A.L.R. p. 700.

█ But as observed in Western Tractor Equipment Company v. Ayers, supra [115 Kan. 769, 225 P. 116]: "The fact that misrepresentations have been made as to the contents of the paper to be signed will not always, however, form a sufficient basis for relieving the signer from liability; the matter being affected in this regard by the attendant circumstances." Here the plaintiff relies upon the alleged fraudulent representations of Hambly. The trial court held in effect that Hambly misrepresented the contract, but it did not find or hold that the representations were fraudulently deceptive, or deliberately intended to deceive. The trial court did hold that Cox was negligent in failing to read the written contracts submitted to him, and that such negligence disentitled him to reformation.

█ We are unable, as a matter of law, to attribute to the misrepresentations that degree of fraud necessary to vitiate the written contracts in the face of the negligence shown upon the record, and as

found by the court. Since, therefore, the holding of the trial court is not clearly erroneous, its refusal to grant reformation must be sustained.

But there is still another compelling reason for our affirmance of the judgment of the trial court. Conceding that Cox was induced to sign the two contracts by his faith and confidence in the representations made to him by Hambly, that the two contracts did in truth and in fact provide that the relationship between the parties would exist for a period of two years unless cancelled by mutual consent, and that such representations were made with a fraudulent purpose to deceive, which in law would excuse his negligent failure to read them, it must still be shown, as a matter of law, that such false and fraudulent representations were imputable to the principal of the agent who made them. The trial court held that Hambly was the agent of the Pabst Sales Company, but without authority to make any contract, oral or written, in behalf of his principal. Obviously, if he had no actual or real authority to make the oral contract, which forms the basis of the plaintiff's cause of action, the Pabst Sales Company; is not liable thereunder unless it can be shown that by its manifestations and conduct, the agent Hambly was clothed with apparent or ostensible authority which the principal is estopped to deny. Siedhoff v. Campbell, 141 Kan. 255, 40 P.2d 404; see also Anheuser-Busch, Inc., v. Grovier-Starr Produce Company, 10 Cir., 128 F.2d 146, decided April 24, 1942; 2 C.J.S. Agency, § 96, p. 1205, and § 96, subsec. c, p. 1211. Hambly, as the agent of the Pabst Sales Company, negotiated with Cox concerning a distributorship. According to the proof, Hambly stated unequivocally the terms and conditions of the agreement, including the assertion that the agreement between the parties would endure for a period of two years. But it is also established by the proof that the agent Hambly stated in respect to each agreement that a written contract embodying the terms of their agreement would be prepared by his principal and submitted to Cox for his signature.

Unquestionably, therefore, Cox knew and understood that the agreement between the parties would be ultimately reduced to a written contract; he contends however that he had a right to believe and did believe that the written contract would be expressive of the true intent of the parties as agreed between himself and Hambly.

Authority of an agent is based upon the words or acts of the principal, and not of the agent. 2 C.J.S. Agency, § 96, subsec. e, (2), p. 1214. Manifestly, notice to Cox that the agreement between the parties would be represented by a written contract prepared in the home office, was notice to him of the limitations upon the authority of Hambly. When, in due course, the written contracts were submitted to him for his signature, each of them contained a positive warning in unmistakable language that no one, including Hambly, had authority to make a contract except the proper officers, and that these written contracts contained the exclusive terms and conditions of the agreement between the parties. Restatement of Law of Agency, Sections 166 and 167; 2 C.J.S., Agency, § 92, p. 1188. The contracts were executed by Cox and returned to the defendant, Pabst Sales Company, and by them executed and returned to Cox, without any knowledge or reason to believe that the written contract did not embrace and include all of the terms and conditions between the parties. We are unable to say in these circumstances that the conduct of the Pabst Sales Company amounted to a manifestation of apparent authority sufficient to bind them to an oral agreement which they had not authorized, of which they had no knowledge, and of which they had no reason to believe existed. Siedhoff v. Campbell, supra.

In the final analysis, Cox seeks to reform two written contracts to accord with an alleged oral agreement which, if reformed, would not be enforceable against the other party, because the alleged oral contract was made by an agent of the other party without any real or apparent authority, and he cannot enforce it. The judgment is affirmed.