**STEWART LUMBER COMPANY et al.,**
**Appellants,**

v.

**Dave FIELDS, Appellee.**

Court of Appeals of Kentucky.

June 27, 1969.

Rehearing Denied Oct. 24, 1969.

W. W. Reeves, Reeves, Barrett, Cooper & Ward, Bruce Stephens, Jr., Hazard, Logan E. Patterson, Patterson & Berger, Pineville, for appellants.

D. G. Boleyn, Hazard, Denver Adams, Hyden, for appellee.

DAVIS, Commissioner.

At issue is the proper location of a boundary line. Dave Fields, appellee, was the plaintiff in the trial court. For practical purposes the issue has resolved into a title dispute between Fields and appellant Kentucky River Coal Corporation. We need not advert to certain timber rights granted by Kentucky River Coal to certain other appellants, since a determination of the title question will be dispositive of the rights of all parties in the premises.

Fields asserted title to a small trapezeum area and alleged that defendant-appellants had cut valuable timber from this tract of his land. He sought damages for the timber removed and asked that his title be quieted. The trial court appropriately proceeded to a determination of the title question, reserving adjudication as to damages, if any. The trial court found that Fields has the title to the land in controversy, from which ruling this appeal is prosecuted.

On June 20, 1902, Tennis Coal Corporation, a predecessor in title of Kentucky River Coal, contracted with Jerry Walker and wife to purchase in fee a tract of land containing about 132 acres. That contract was consummated by delivery of a deed from the Walkers to Tennis on October 20, 1903. The description is given in specific courses and distances expressed in feet. The contract description was general, and the contract required Tennis to bear expense of a survey. We shall refer to this as the Walker Tract.

On June 26, 1902, Tennis also contracted with Elihu Fields and wife to purchase the coal, mineral, and mining rights in a tract of land adjoining the Walker Tract. Elihu Fields was the grandfather of appellee Dave Fields, and his predecessor in title as to the surface rights overlying the mineral rights acquired by Tennis from Elihu Fields. The deed from Elihu Fields et al. to Tennis was delivered on October 22, 1903, and described a boundary purporting to contain 147.42 acres. We shall refer to this tract as the Mineral Tract.

Before closing the transaction as to the Mineral Tract, Tennis obtained a survey of the Mineral Tract. The description used in the Mineral Tract deed was prepared so as to conform to the ground survey which had been made and also contains specific courses and distances for each call. The distances are given in terms of feet rather than rods or chains. J. M. Fields, father of appellee, testified that his father, Elihu Fields, participated in the survey and that he, J. M. Fields, as a small boy, accompanied the survey party and assisted in such matters as cutting brush. J. M. Fields testified that the line as contended for by appellee was the line recognized by the surveyors and the parties at the time.

In the descriptions of the Walker Tract and the Mineral Tract, reference was made to the boundary lines of a 500-acre patent issued to Levi Shepherd in 1848. The opening call in the deed of the Walker Tract provides "the beginning corner for a survey made for Levi Shepherd" as the beginning point for the description. The litigants are agreed as to the site of the beginning corner of the Levi Shepherd patent. Other pertinent calls in the Walker Tract description are:

"S 62 E 132 feet to hickory and black gum on top of ridge, a corner of Elihu Fields' tract [Mineral Tract]; thence with said Fields' line S 9 W 216 feet to stake in line of Elihu Fields' tract; thence leaving Fields' line and around hill *S 49 W 2385* feet to stake; *N 22 W 1765* feet to the beginning, * * *." (Emphasis added.)

It will be borne in mind that the "beginning" to which the call of N 22 W 1765 proceeds coincides with the known beginning corner of the Levi Shepherd patent.

A comparison of pertinent portions of the description used in the Mineral Tract deed reveals:

"* * * leaving Jerry Walker's line at 21 poles from corner No. 8 of this tract; thence around and up hill S 28½ E 2376 feet to line of a 500 acre survey made for Levi Shepherd; thence with line of same, *S 49 W 2031 feet* to a stake; *N 22 W 1765 feet* to the beginning of Shepherd survey * * *." (Emphasis added.)

It is patent that the course of S 49 W, appearing in each deed, and the course and distance of N 22 W 1765 feet, seen in both deeds, define a common boundary line for the Walker Tract and the Mineral Tract. The fact that the distance for the call of S

49 W is longer in one description that it is in the other is not a discrepancy, since there is no common boundary for the two tracts except for the shorter distance of 2031 feet shown in the Mineral Tract deed.

All parties concede that a slight error of closure exists in the Levi Shepherd description. The last call in that description is "N 20 W 100 poles," a distance of only 1650 feet, whereas the closing calls in the deeds for the Walker Tract and Mineral Tract are "N 22 W 1765" feet, or 115 feet more than 100 poles. The error of closure in the Levi Shepherd patent was shown to be approximately 130 feet. The engineers who testified agreed that no one could say conclusively which of the calls accounts for the closure error. Thus it is apparent that it is not possible to demonstrate with engineering precision exactly where the lines of the Levi Shepherd patent run. Yet Tennis in acquiring its deeds, in transactions substantially contemporaneous, used virtually the same courses and distances for the admitted common boundaries of the Walker and Mineral Tracts as are shown as the last two calls in the Levi Shepherd patent. The slight variation in the courses is not significant, considering recognized changes in magnetic north and the impossibility of human perfection.

There is no room for doubt, nor any contention by the litigants, but that the grantee (Tennis) and the grantors (Jerry Walker and Elihu Fields) recognized that a common boundary existed between the two tracts and that each of them undertook to coincide that common boundary with lines of the Levi Shepherd patent. Apparently everyone knew and still knows the location of the beginning point of the Shepherd patent. Obviously, 100 poles, or 1650 feet, the last call distance in the Shepherd survey, falls 115 short of the 1765 feet used in both the Walker and Mineral Tract deeds. It seems abundantly clear that the surveyors who prepared the 1903 descriptions knew that the call fixing 1765 feet in distance to reach the beginning point of

the Shepherd survey was a departure from the distance as contained in the Shepherd patent. Since there is an admitted error of closure in the Shepherd description, the parties had adequate basis for fixing the location of the Shepherd line as they then recognized and understood it to be. Hotze v. Ring, 273 Ky. 48, 115 S.W.2d 311; Liberty National Bank & Trust Co. v. Merchant's & Manufacturer's Paint Co., 307 Ky. 184, 209 S.W.2d 828.

In truth, this controversy is not to turn on the precise location of the lines of the Shepherd patent but upon the location of the admitted common boundary lines between the Walker and Mineral Tracts. It is true that the common lines were described as coinciding with the Shepherd lines—and well they might—but whether they do or not is not controlling. What is controlling is the overwhelming written evidence (the descriptions in the deeds to Tennis) which conclusively shows that in 1903 Tennis and its grantors mutually determined the line by actual survey and employed descriptions clearly recognizing the common boundary lines.

Appellee seeks to reconcile the closure error in the Shepherd patent by reversing the last two calls from the beginning corner. To do this, of course, results in fixing the Shepherd line 115 feet northwardly from the point urged by appellants. More importantly, to do this completely overlooks the fact that Walker, Elihu Fields, and Tennis all recognized that line as extending 1765 feet, not 1650.

■ Appellee, as the plaintiff asserting title, had the burden of demonstrating the strength of his own title and may not prevail merely by pointing out weaknesses in the title of his adversary. Coleman Mining Co. v. McClanahan, Ky., 237 S.W.2d 543. As noted in Bryant v. Perry, 284 Ky. 698, 145 S.W.2d 1055, the plaintiff asserting superior title has the burden of showing that the land in dispute is embraced within his boundary lines, which he must locate with persuasive certainty. The deed

**143**

under which appellee holds title describes his boundary, in pertinent part:

"  *  *  *  thence running up the Hannah Branch as it meanders to the line of the Kentucky River Coal Company as called for in the mineral deed of Elihu Fields; thence  *  *  *  with said mineral deed  *  *  *;  thence with the company's line  *  *  *;  thence up the mountain with said line  *  *  *  to the beginning corner of a Levi Shepherd 500 acre survey;  *  *  *."

It is manifest that the deed under which appellee holds is measured by the Elihu Fields mineral deed to which it refers. All of the witnesses agree that the location of the Elihu Fields mineral-deed lines are as contended by appellants. Clearly, the deed under which appellee claims does not purport to embrace the area which he claims.

From all this, it follows that the chancellor's finding to the contrary was clearly erroneous. CR 52.02.

The trial court additionally found that appellee had shown title by adverse possession. There was evidence that J. M. Fields, predecessor in title of appellee, cultivated and fenced some of the Elihu Fields tract, but as to the land in controversy there was no showing of substance to support a finding of adverse possession. There was no showing that appellee or his predecessors in title claimed and occupied to a well-defined and marked boundary, nor is there any showing of what portion of the disputed land was adversely possessed. In these circumstances the finding of title by adverse possession was an erroneous one. See Shepherd v. Morgan, Ky., 246 S.W.2d 131.

The judgment is reversed for entry of a new judgment dismissing the complaint.

MONTGOMERY, C. J., and MILLIKEN, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.