Cecil G. NOBLE, Plaintiff-Appellant,

v.

NATIONAL MINES CORPORATION,
Defendant-Appellee.

No. 84–5163.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1985.

Decided Oct. 4, 1985.

---

Ben B. Hardy, argued, Hardy & Hardy, Louisville, Ky., for plaintiff-appellant.

Paul C. Combs, Combs & Combs, Prestonsburg, Ky., and C. Kilmer Combs, argued, Wyatt, Tarrant & Combs, Lexington, Ky., for defendant-appellee.

Before MERRITT and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

This appeal represents the most recent stage in a protracted dispute over the ownership of two tracts of land in Kentucky. The litigation, which is now before this Court for the second time, began in 1976, when plaintiff Noble brought suit against defendant National Mines Corporation to quiet title to the land, to enjoin National from interfering with Noble's use of it, and to recover damages as a result of National's use of the property. The current appeal is from summary judgment granted the defendant by the United States District Court for the Eastern District of Kentucky. We reverse the District Court and remand for proceedings consistent with this opinion.

## I.

The disputed land lies in a mountainous, sparsely populated region of eastern Kentucky. It contains coal reserves. No one lives on the land or is in actual possession of it, but both defendant and plaintiff claim it under chains of title originating with grants from the Commonwealth of Kentucky. Defendant claims under three separate patents issued by the Commonwealth: two in 1867 to M.J. Amyx and one in 1872 to Stephen G. Reid. Plaintiff claims under two separate patents, issued in 1892, to A.I. Totten and E.R. Totten, respectively.

Noble acquired his interest in the disputed land in 1975 from the partnership of which he was a member. The conveyance was executed in the name of the partnership by Noble to himself. After the conveyance, Noble attempted to lease the property for coal mining, but was unsuccessful, as National was already engaged in mining operations on the property. Noble then brought the present action in 1976 to quiet his title to the property, to enjoin National from further mining operations, and to recover damages for the value of the coal National had extracted. In May 1980, the District Court dismissed the action on the ground that Noble had failed to prove his title to the property, after denying Noble permission to submit new evidence on this question. The Court expressly withheld judgment on the issue whether defendant was the owner of the land. In *Noble v. National Mines Corp.*, 672 F.2d 917 (1981) (unpublished per curiam order), we reversed, holding that the trial court had abused its discretion by not allowing Noble to submit the new evidence.

After further proceedings, the case once more came to the District Court for decision on cross-motions for summary judgment on October 7, 1983. The Court found for National, holding that plaintiff had again failed to establish his chain of title because (1) Noble's conveyance of the partnership property to himself was void, and (2) National's chain of title was superior to Noble's chain. The Court also held that the defendant's patents "embraced the land in controversy" and determined the defendant "to be the owner by lease of the property in controversy." District Court Memorandum Opinion and Order, JA 227; District Court Judgment JA 229.

## II.

The burden of proving title to the disputed property rests on Noble as plaintiff. *See, e.g., Stewart Lumber Co. v. Fields*, 445 S.W.2d 140 (Ky.1969); *Coleman Mining Co. v. McClanahan*, 237 S.W.2d 543 (Ky.1951). If Noble is unable to demonstrate valid title to the property, any defects in National's chain of title are irrelevant.

The trial court held that Noble's conveyance of the partnership's interest in the disputed land was void. Thus, in the District Court's view, the deed under which Noble claims title is a mere nullity, totally without legal force and effect, and incapable of ratification. For this proposition, the Court relies on *Smith v. Hall*, 217 Ky. 615, 290 S.W. 480 (1927), a case stating the well-settled principle that a partner without actual authority cannot bind the partnership unless he or she acts within the scope

of the usual partnership business. *Id.* 290 S.W. at 482. A corollary of this principle is that an act of a partner without actual authority or in contravention of an express restriction on authority does not bind the partnership to persons having knowledge of the restriction. Both of these principles are currently codified in sections 362.190(1) and (4) of the Kentucky Uniform Partnership Act.

Assuming *arguendo* that the partnership was still in effect at the time of the challenged transaction, and that Noble acted contrary to a restriction on his authority, this does not render the deed a legal nullity from its inception. Neither *Smith v. Hall, supra,* nor the Uniform Partnership Act dictate this result. Proper analysis suggests that, although the deed may be voidable by the partnership, it is not a legal nullity, incapable of ratification.

Under K.R.S. 362.195(1), "any partner may convey title to [partnership] property by a conveyance executed in the partnership name...." [1] This section directly addresses real property transactions; it provides the correct analytical starting point in this case.

The plain language of section 362.195(1) provides that, if the conveyance is executed in the partnership name, *any* partner may convey real property for the partnership. Thus, as a threshold matter, the statute does not prohibit a partner without actual authority from conveying real property. [2]

There are instances in which the transaction can be stripped of its legal effect, or in other words, avoided. Within the same section, it is provided that "the partnership may recover such property" given certain conditions. The statute's exception simply provides that the partnership "may recover" the property; this provision contemplates that the partnership can take affirmative action to negate the transaction.

That a transaction can be rescinded or avoided does not mean that it was void in the first instance. In fact, just the opposite is true. If the transaction is void from its inception, no formal action is required to negate it, since a void transaction has no legal force or effect. [3]

In order for the statute to make sense, then, the language clearly contemplates that a real property transaction, effected even by one without actual authority, is not void. Section 362.195(1) clearly provides the transfer here with legal force and effect.

Nor does section 362.190(4) direct a different result. [4] That section simply says that, as a general proposition, the partnership is not bound by partners who act contrary to a restriction on their authority when the parties dealing with the partner had knowledge of the restriction. This section codifies a basic tenet of partnership common law, designed to protect the interests of the partnership entity as against those who deal knowledgeably with its partners. *See* Restatement (Second) of

---

1. K.R.S. 362.195(1) provides in full:
   (1) Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name; but the partnership may recover such property unless the partner's act binds the partnership under the provisions of KRS 362.190(1) or unless such property has been conveyed by the grantee or a person claiming through such grantee to a holder for value without knowledge that the partner, in making the conveyance, has exceeded his authority.

2. In different factual circumstances, state courts have applied different sections of the Uniform Partnership Act to hold that certain property transactions were void. *See, e.g., Ditzel v. Kent,*

131 Mont. 129, 308 P.2d 628 (1957); *Windom National Bank v. Klein,* 191 Minn. 447, 254 N.W. 602 (1934). These cases are not relevant to Noble's transaction, which was executed in the name of the partnership and is clearly controlled by 362.195(1).

3. Further, unlike voidable transactions, void transactions cannot be ratified. *See, e.g., Ridgely v. First National Bank,* 75 F. 808, 810 (10th Cir.1896).

4. K.R.S. 362.190(4) provides:
   No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction.

Agency § 166 (1958); H. Reuschlein & W. Gregory, Agency and Partnership 289 (1979); *see also Cox v. Pabst Brewing Co.,* 128 F.2d 468 (10th Cir.1942). In no way does this section mandate that a transaction is *void* when a partner acts contrary to a restriction on his or her authority. It simply protects the partnership by providing that the entity is not bound by that act.

The reason for this rule is that partnerships often act informally based on unwritten tacit understandings. That is in part what Noble claims happened here, and no partner has come forward to dispute his claim.

There are cases in which, for strong public policy reasons, a property transaction should be deemed void from its inception. Traditional common law principles support the view that when there is fraud in the execution of the instrument, "as where it has been misread, or some other fraud or imposition has been practiced upon the party in procuring his signature and seal," *Hartshorn v. Day,* 19 How. 211, 223, 60 U.S. 211, 223, 15 L.Ed. 605 (1856), the deed is void.

The record does not support the conclusion that Noble's transaction was fraudulent. The deed transfer occurred after Noble had appeared in court to formally dissolve the partnership. He argues that his action was appropriate to the "winding up" phase of the partnership's dissolution. Although it is open to the former partners to challenge Noble's transaction, no credible case of fraud in the execution is supported by the record in this case.

In addition to common law definitions of void transactions, some statutes provide that certain property transactions are void. In *Altemus v. Nichols,* 115 Ky. 506, 74 S.W. 221 (1903), the Kentucky Court of Appeals applied a statute which declared null and void any property transfers made while another has adverse possession of the land conveyed. *Id.* 74 S.W. at 222. Citing the "peace of society and the repose of occupants" as the statute's guiding purpose, the court held that the challenged

deed was "absolutely ineffectual for every and any purpose." *Id.*

The controlling statute in this case authorizes, rather than prohibits, the challenged transaction. A legislative intent to render an unauthorized partnership transaction null and void could have been expressed clearly. Further, no sensible policy is served by a rule that an unauthorized partnership real property conveyance is void because the partners dealt contrary to an express restriction on authority with parties who had knowledge of the restriction. The goal of that principle is to protect the entity against claims of third parties who deal knowledgeably with individual partners. That goal is well-served by affording the partnership a basis for asserting its own rights. To hold that an unauthorized real property transaction is void because of K.R.S. 362.190(4) is simply to increase uncertainty in property transactions for no good purpose.

Because K.R.S. 362.195(1) enables rather than prohibits the challenged action here, and because no strong public policy is served by declaring this transaction void from its inception, we reverse the District Court's holding on the issue of plaintiff's chain of title.

### III.

Noble also argues on appeal that the District Court erred in refusing to re-open the record for the introduction of evidence by plaintiff's registered engineer. This evidence purportedly addresses the location of one of the disputed tracts of land; Noble maintains that the testimony will prove that defendant's positioning of one of the tracts of remote mountain land is inaccurate by one thousand feet. The import of this evidence is to show, contrary to the District Court's finding, that the senior Amyx patent does not totally embrace the Totten patent.

The engineer's evidence is not presently of record since, on the day set for his deposition, he mistakenly went to the wrong law offices in Eastern Kentucky, and therefore, failed to give his deposition.

This occurred on the last day allotted for the taking of plaintiff's evidence in this trial by deposition. Noble has made several motions since 1978 to re-open the record to include this proof; each of these motions has been denied.

▊ As we observed in our first opinion in this case, the decision to re-open the record is one committed to the sound discretion of the trial court, and will be overturned on appeal only for an abuse of discretion. *See Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 478 (3rd Cir.1978); *Sandusky Foundry & Machine Co. v. City of Wickliffe*, 483 F.2d 695, 700 (6th Cir.1973); *Ramsey v. United Mine Workers of America*, 481 F.2d 742, 753 (6th Cir.1973).

Pursuant to this Court's instructions on remand,[5] the District Court reopened the record to include evidence concerning two alleged weaknesses in plaintiff's chain of title. Upon motion by the defendant, however, and, as noted by the defendant in tendering the motion, consistent with the spirit of our first decision, the District Court also opened the record to include a document strengthening defendant's chain of title. The Court also opened the record to admit evidence relevant to the issue of Noble's authority to transfer real property for the partnership.

▊ The District Court clearly did not interpret a law of the case doctrine narrowly to preclude opening the record for evidence which helped defendant, although the evidence was not specifically enumerated in our prior decision. The Court below correctly did not limit itself to opening the

record for only two pieces of evidence but rather, exercised its discretion to assemble before it necessary proof to resolve this protracted litigation.

There is a public interest in resolving claims of title concerning Kentucky's remote and largely unpopulated mountain lands. The Kentucky Court of Appeals implicitly recognized this in 1940 when, in a dispute concerning different patents from those at issue here, it chronicled the rampant confusion that had marked eighteenth and nineteenth century land holdings in the state. *Warfield National Gas Co. v. Ward*, 286 Ky. 73, 149 S.W.2d 705 (1940). We were apprised at oral argument that some measure of this confusion has survived into the present in relation to remote areas where there has been no influx of population.

Plaintiff seeks to prove a discrepancy in defendant's plotting of the tract at issue. This issue goes, not to the literal chain of title of either party, but to the positioning of the tracts at issue. Without at least considering this evidence, the validity of the relevant patents cannot be determined accurately.

▊ The District Court, both in the first and second dispositions in this case, ruled that plaintiff's chain of title was invalid. Thus, the actual positioning of the tracts was irrelevant. To the extent that a refusal to re-open the record was predicated by either Court on the theory that plaintiff could not prove title in any case,[6] that reason no longer exists; by virtue of our disposition of the partnership deed issue, plaintiff's chain of title has not failed as a

---

5. In that decision we stated:

The District Court held that the plaintiff failed to establish a prima facie case of good title within the time allowed for the taking of evidence. The Court also denied the plaintiff's motion to reopen the case for the submission of additional evidence. We conclude that the District Court abused its discretion in refusing to reopen and remand to the District Court with instructions to reopen and permit the submission of additional evidence.

*Noble v. National Mines Corp.*, 672 F.2d 917 (1981).

6. The District Court in the first proceeding bifurcated the disposition of the issues such that it only considered evidence on plaintiff's literal chain of title. Assuming it had upheld plaintiff's chain, the issues of defendant's chain of title and the assessment of damages would then have come into play. Given this method of structuring the case, it cannot fairly be said that plaintiff waived his right to raise the issue of the boundary discrepancy by not raising it in the first appeal, which was concerned solely with the District Court's analysis of plaintiff's chain of title.

threshold matter. Thus, evidence concerning the actual position of this remote mountain land is highly relevant. On remand, the District Court should re-open the record to allow proof on this issue.

Accordingly, the judgment of the District Court is reversed and remanded for proceedings consistent with this opinion.