No. 39,417

Howard C. Myers, *Appellee*, v. Fleetwood Farms, Inc., *Appellant.*

(271 P. 2d 257)

Opinion filed June 12, 1954.

*Philip E. Buzick*, of Topeka, argued the cause, and *James A. McClure, Robert L. Webb, Ralph W. Oman, Robert A. McClure* and *James D. Waugh*, all of Topeka, were with him on the briefs for the appellant.

*William Hergenreter*, of Topeka, argued the cause, and *Wendell L. Garlinghouse* and *Warren W. Shaw*, both of Topeka, and *Victor Hergenreter*, of Alma, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This is an action to reform a written cattle-feeding contract to conform to an alleged prior oral agreement between the parties, and to recover judgment for an alleged balance due under the contract as reformed. As a basis for reformation plaintiff alleges

fraud and misrepresentation by defendant's agent in inducing him to sign the contract.

Defendant has appealed from an order overruling its demurrer to the second amended petition, hereinafter referred to as the petition.

Plaintiff is a resident of Wabaunsee County and is engaged in the handling and feeding of cattle.

Defendant is a Virginia corporation, and its business address is in New York City.

Due to the nature of the controversy, the question involved, and the difficulty in summarizing accurately the allegations of the petition, that pleading, although lengthy, is set out in full:

"3. That on or about the 30th day of August, 1951, Alex McKay-Smith, the agent, servant, and employee of the defendant, then and there acting within the scope of his agency and employment, requested the plaintiff to feed and winter cattle for the defendant in the vicinity of Alma, Kansas. That the said Alex McKay-Smith on or about August 30, 1951, while conversing with the plaintiff in front of the plaintiff's home in Alma, Kansas, orally stated to the plaintiff that his employer would pay up to 34¢ per pound gained for the wintering of steers. That said Alex McKay-Smith then requested that the plaintiff give him (Alex McKay-Smith) a piece of paper to write on. The plaintiff then handed to the said Alex McKay-Smith a note book in which Alex McKay-Smith wrote in his own handwriting as follows:

'Alex McKay-Smith, White Post, Va.

Te. Boyce 271J1

Spay heifers

stopover

Norfolk and Western Ry.

Yearlings up to 34

Calves up to 35.5'

"That on or about October 16, 1951, the day said steers arrived at the railroad siding at McFarland, Kansas, Geza E. Neuman de Vegvar, arrived in Alma, Kansas, and conversed with the plaintiff with reference to the contract between the plaintiff and the defendant corporation, and the sum to be paid the plaintiff for feeding said steers. Prior to the signing of the written contract hereinafter referred to, the said Geza E. Neuman de Vegvar orally stated numerous times that the defendant corporation would pay the plaintiff 34¢ per pound gained for wintering and feeding said steers. Said statements by the said Geza E. Neuman de Vegvar were made by him at the railroad siding at McFarland, Kansas, and in the office of the plaintiff at Alma, Kansas. When the said Geza E. Neuman de Vegvar made said statements with reference to the compensation to be paid to the plaintiff for wintering said steers, plaintiff stated to the said Geza E. Neuman de Vegvar that he would feed and winter said steers for 34¢ per pound gained by said steers during the time said steers were under his custody and control.

"4. That while the above referred to oral agreement was in full force and effect and on the 16th day of October, 1951, Geza E. Neuman de Vegvar,

Vice-President of said defendant corporation, called upon the plaintiff at his office in Alma, Kansas, and stated to plaintiff that the defendant corporation had required that the oral agreement entered into between plaintiff and defendant be reduced to writing. Geza E. Neuman de Vegvar further advised plaintiff that the terms of the oral agreement were satisfactory to the defendant and that a written agreement would contain only the provisions of said oral agreement. That plaintiff stated that so far as he was concerned the oral agreement was satisfactory and no written agreement was necessary. That Geza E. Neuman de Vegvar continued to insist that the agreement be in writing. That the said Geza E. Neuman de Vegvar wrote and prepared a letter contract which he handed to plaintiff in plaintiff's office about 11:30 P. M. on the 16th day of October, 1951, at a time when plaintiff was busily engaged in other work. Plaintiff stated to Geza E. Neuman de Vegvar that he was too busy to go over the letter contract at that time and was advised by Geza E. Neuman de Vegvar that the said letter contract only reduced to writing the above referred to oral agreement, theretofore entered into between plaintiff and defendant. That plaintiff stated to Geza E. Neuman de Vegvar that it was too late, that he did not have time to go over the contract and to read it, that Geza E. Neuman de Vegvar should return to his office the following day, namely, October 17, 1951, and that the parties at that time could carefully go over the terms of said letter contract and to check the terms thereof to make certain it contained the terms orally agreed to between the parties. That Geza E. Neuman de Vegvar, in order to obtain the signature of the plaintiff on said contract, urged the plaintiff to sign the same immediately without reading the same and he stated that he had to return to Topeka in order to take an airplane back to Virginia. That when said letter contract was presented to the plaintiff as aforesaid at 11:30 P. M., Geza E. Neuman de Vegvar specifically stated to the plaintiff that it contained only the terms of the oral agreement heretofore entered into and specifically that it provided that the plaintiff should receive 34¢ per pound for each pound gained by said steers during the time that they were in the plaintiff's custody. That the plaintiff relying upon the statements and representations made by Geza E. Neuman de Vegvar with reference to the terms of said oral agreement and specifically regarding the compensation of 34¢ for each pound gained by said animals during the time said animals were in plaintiff's custody and having faith in the statements made by Geza E. Neuman de Vegvar, signed said letter contract without reading the same, and handed the same to Geza E. Neuman de Vegvar, but that the signature of plaintiff thereon was secured by the fraud, deceit, misrepresentations, artifice, trickery, and dishonesty of the said Geza E. Neuman de Vegvar. That the fraud, deceit, misrepresentations, artifice, trickery, and dishonesty of said Geza E. Neuman de Vegvar consisted of the following, to-wit:

"(a) Geza E. Neuman de Vegvar stated and represented to the plaintiff that said letter contract provided that plaintiff should receive 34¢ per pound for each pound gained by said steers, while in the care of the plaintiff, when in fact said letter contract provided that plaintiff should receive a lesser sum per pound gained by said steers, a fact well known to said Geza E. Neuman de Vegvar.

"(b) Geza E. Neuman de Vegvar well knew that the plaintiff was under the mistaken belief that said letter contract provided that plaintiff was to receive 34¢ per pound for each pound gained by said steers while in the custody of the plaintiff, but did not call to the attention of the plaintiff the fact that the letter contract did not so provide.

"(c) Geza E. Neuman de Vegvar well knew that the plaintiff had not read said letter contract at the time he signed the same and was relying upon said Geza E. Neuman de Vegvar's statements and representations as to the contents and provisions of said letter contract pertaining to compensation to be paid the plaintiff for feeding said steers.

"(d) Geza E. Neuman de Vegvar urged haste in signing said letter contract for the purpose of preventing the reading thereof by the plaintiff.

"(e) Geza E. Neuman de Vegvar so cleverly wrote said letter contract, and so cleverly and adroitly concealed the change from the true intent of the parties and their oral agreement, that plaintiff in hurriedly examining said letter contract could not know that said letter contract did not contain the true intent of the parties as expressed in the then existing oral agreement; that the change from the true intent of the parties and their oral agreement could only be ascertained by actual mathematical computation.

"That a copy of said letter contract is marked Exhibit A, attached hereto and made a part hereof.

"5. That said letter contract was entered into between the parties for the express purpose of reducing to writing the oral agreement previously entered into by the parties.

"6. That at all times herein mentioned the said Geza E. Neuman de Vegvar was an officer of said defendant, its servant, agent, and employee, and was acting within the scope of his position, agency, and employment.

"7. That when the said 412 head of steers were delivered to the plaintiff at the stockyard in McFarland, Kansas, on the 16th day of October, 1951, their total gross weight was 283,560 pounds. That on or about the 12th day of April, 1952, the defendant requested plaintiff to deliver said steers to the stockyard at McFarland, Kansas, for shipment to White Post, Virginia. That pursuant to said request the defendant (sic) did deliver said steers to the stockyards at McFarland, Kansas, on April 17, 1952, at which time said steers were weighed and the gross weight of 411 of said steers were found to be 355,960 pounds, and the remaining steer weighed approximately 866 pounds (which was sold by defendant and not shipped) making an increase of 73,266 pounds during the time the steers were under the control and custody of the plaintiff. That under and by virtue of the actual agreement entered into between the parties hereto there was due and owing to said plaintiff 34¢ per pound for each pound gained during said winter feeding which sum amounted to a sum of $24,910.44.

"8. That plaintiff has performed all of the conditions of the actual agreement entered into between the parties hereto, that said letter contract should be reformed by judgment of this court and this court should order said letter contract to speak and set forth the actual agreement between the parties as stated above. That there was due and owing to the plaintiff from the defendant the sum of $24,910.44 for feeding and wintering of said steers as above alleged under the terms of said true agreement of which defendant has paid

the sum of $18,530.34 leaving a balance due plaintiff in the sum of $6,380.10; that plaintiff has made demand upon defendant for the payment of said balance but that the defendant refused and still refuses to pay the same.

"Wherefore, plaintiff prays for an order of this court reforming said letter contract to conform to the antecedent oral agreement of the parties insofar as the same attempts to change the valid oral agreement. That said letter contract be reformed by substituting $102,590.40 in the place of $108,970.50 as the same appears in subparagraph (a) of paragraph 9. That plaintiff have and recover judgment from the defendant in the sum of $6,380.10 the balance due under said contract as reformed and for such other and equitable relief as to the court may seem just and equitable."

Material portions of the letter contract, referred to as exhibit "A" and attached to the petition, are as follow:

"October 16, 1951

"Fleetwood Farms, Inc.
521 Fifth Avenue
New York 17, N. Y.
"Gentlemen:

"I hereby acknowledge receipt from you of the 412 (four hundred twelve) head of Herford yearling steers, grading 'good' or better, originating from Saubel's Circle Dot Ranch near Taylor Springs, New Mexico, which you have purchased from Mr. E. C. Turkington and have shipped to my care to McFarland, Kansas.

"You have exhibited to me 'Settlement Sheet', dated October 11, 1951, signed by Mr. R. H. Corbett, evidencing that said steers had a net pay-weight of 283,560 (two hundred eighty three thousand five hundred sixty) pounds and that the purchase price paid by you was $102,790.50 (one hundred two thousand seven hundred ninety and 50/100 Dollars).

"I am to winter said steers for you from the date of their arrival at McFarland, Kansas, i. e. October 14, 1951, until a date in April 1952 of your selection. You will give me five days' notice of the exact redelivery date, when said steers are to be reweighed by me under the supervision of your designee at the railroad scales at McFarland, Kansas, and redelivered to you immediately thereafter fob railroad cars at McFarland, Kansas.

"200 of the aforesaid 412 steers will be grazed and fed on the farm of Gnadt & Stuewe near Alma, Kansas.

"212 of the aforesaid 412 steers will be grazed and fed on the farm of Kenneth E. Vilander near Maple Hill, Kansas.

"You have today given me your check in the amount of $6,180.00 (six thousand one hundred eighty and no/100 Dollars); i. e. $15.00 per head, as downpayment on the wintering. Should the average weight gain per head of steers (based on the difference between the redelivery weight and the aforesaid pay-weight of 283,560 pounds) be less than 90 (ninety) pounds, then and in such event, I am to refund to you upon redelivery to you such portion of said $6,-180.00 as 90 pounds less the actual weight gain per head of steers bears to 90 pounds.

"Upon redelivery to you fob railroad cars at McFarland, Kansas, you shall

pay me as my entire compensation for the wintering as herein described, by your check as follows:

"34 (thirty-four) cents per pound of steers weighed on the railroad scales at McFarland, Kansas, less the difference of the following two amounts:

"(a) $108,970.50 (one hundred eight thousand nine hundred seventy and 50/100 Dollars)

"(b) Any refund on the down-payment as aforesaid."

The remainder of the contract pertains to brand inspections, title to the cattle while being wintered, freight and veterinary charges, and details with respect to feeding and care of the cattle, with which we are not concerned in this appeal. It was signed at the end thereof by plaintiff and accepted in writing by defendant through its agent and vice-president.

Defendant's demurrer is as follows:

"Comes now the defendant, Fleetwood Farms, Inc., and demurs to the plaintiff's second amended petition herein upon the grounds that said petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant, shows the plaintiff to be guilty of such acts and omissions as would bar his recovery, and contains such a confusion of theories that it is impossible to determine from the general scope of the petition upon which of several theories a recovery is sought or upon what grounds plaintiff demands the relief requested."

As stated, this demurrer was overruled and defendant has appealed. The correctness of that ruling is the only question presented.

Defendant's contentions may be summarized as follow:

The petition on its face shows that no confidential relationship existed between the parties and that they dealt at arm's length. It is not alleged that plaintiff was unable to read the contract before signing because of any physical or mental infirmity; that he would have suffered any loss or damage by taking time off from other work to read it before signing; that he was unfamiliar with the cattle-feeding business, or was in any way operating under any handicap or disadvantage. That although plaintiff had the opportunity to read and understand the contract his only excuse was that he was busily engaged in other work and defendant's agent wanted to catch a plane, all despite the fact they were dealing with a matter involving thousands of dollars; and that although the alleged oral agreement was a very simple one calling for a flat rate of 34 cents per pound of weight gained, the written contract, which covered three type-written pages, was comparatively involved and contained a formula for computing the contract price, none of which had any meaning or significance under plaintiff's theory, and that such fact constituted

open and apparent evidence to him at the time of signing that it contained something more and different than the alleged oral agreement.

Because· of the foregoing, it is argued that any damage resulting to plaintiff was incurred and brought about through his own inexcusable negligence in not ascertaining the contents and meaning of the contract before signing, and therefore no cause of action for equitable relief on the ground of fraud is stated, and in support thereof reliance is had upon what was held in *Tractor Equipment Co. v. Ayers,* 115 Kan. 769, 225 Pac. 115, and other decisions of like effect.

Plaintiff, on the other hand, contends that from the allegations of the petition it is clear that the only negligence on his part, if any, consisted in believing and relying on the statements and representations of defendant's agent, which later proved to be false; that there was nothing about the contract to warn a·person on first glance that it contained the complicated formula for computing the contract price which, it is maintained, is vastly different than the alleged oral agreement of a straight 34 cents per pound gain, and he likewise relies on what was said in the Tractor Equipment case, *supra,* in support of his position.

The question of negligence of one signing a contract without first reading it and familiarizing himself with its contents as being a defense in an action based on fraud has been before the court on numerous occasions. Resort to the decisions shows that as a general proposition each stands upon its own footing and is governed by the attendant facts and circumstances of the particular case.

This case has not been tried. What the proof may establish is entirely another matter. We are not concerned with and express no opinion as to an analysis of the "formula" for computing the contract price contained in the contract signed by the parties. We confine ourselves solely to the question whether plaintiff's allegations are sufficient to withstand the demurrer.

It is our opinion that they· are.

The well-reasoned opinion in the Tractor Equipment case, *supra,* discusses the general rule pertaining to avoidance of the provisions of a written contract by one who does not read before signing, and then cites with approval the well-recognized exception announced in *Tanton v. Martin,* 80 Kan. 22, 101 Pac. 461, which is:

"A recognized exception to the rule that a party is held to know and be

bound by the provisions of a writing which he signs is where one party procures another to execute the writing by falsely and fraudulently representing that it contains the stipulations previously agreed upon when in fact it does not and where the party signing the writing relies upon the faith of these representations and is thereby induced to omit the reading of the writing which he signs." (Syl. 1.)

For a more complete statement of the exception to the general rule we cite the following from *Cox v. Pabst Brewing Co.*, 128 F. 2d 468 (10th Circuit):

"In order to afford relief against the harshness of the general rule that a party is held to know and to be bound by the provisions of the writing which he signs, the courts now recognize the general rule based upon sound equitable considerations, that liability on written instruments may be avoided, or such written instruments may be reformed and enforced in accordance with an antecedent oral agreement, when it is made to appear that the party executing the written agreement without reading the same was deceptively or fraudulently induced to believe that the written agreement contained all of the terms and conditions of the antecedent oral agreement, and when the circumstances justify a belief in the integrity of the promises made to him that such written contract does in fact represent the true antecedent oral agreement between the parties. Nor will the negligence of the defrauded party excuse the fraud, unless it is gross and palpable. Kansas adheres to this rule." (Numerous citations.)

See also *Stegman v. Professional & Business Men's Life Ins. Co.*, 173 Kan. 744, 252 P. 2d 1074, where it was said:

"An invariable qualification of the rule which makes parol evidence inadmissible to vary the terms of a written instrument is the one which permits such testimony where a contract is induced or procured by fraud." (Citing cases.) (p. 751.)

In our opinion the allegations of the petition are sufficient to state a cause of action, and the order of the lower court overruling defendant's demurrer thereto is affirmed.