Jack J. HERMELINK, Plaintiff,

v.

DYNAMEX OPERATIONS EAST, INC., Defendant.

No. 99–2335–JWL.

United States District Court, D. Kansas.

June 9, 2000.

James E. Kunce, Overland Park, KS, for Plaintiff.

Benjamin F. Mann, Kathryn B. Bussing, Blackwell Sanders Peper Martin LLP, Kansas City, MO, for Defendant.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

This suit arises from an independent contractor agreement entered into by plaintiff, Jack Hermelink, and defendant, Dynamex Operations East, Inc., for the operation of a delivery truck. Plaintiff alleges that on September 8, 1998, he en-

tered into an oral agreement with defendant to drive a dedicated delivery route. On that same day, defendant's agent presented him with a written contract which purportedly set forth the terms of the parties' oral agreement. Plaintiff signed the written contract without reading it, and now claims that the writing was materially different from the parties' oral agreement. Alleging that he was induced to sign the contract by defendant's fraud, in Count I of his complaint plaintiff asks the court to reform the contract to comport with the parties' true agreement. Alternatively, in Count II of his complaint, plaintiff seeks damages for breach of the contract as written, claiming that his termination was not in accordance with the contract's terms.[1] Moreover, plaintiff brings two tort claims against defendant, alleging negligent misrepresentation in Count III and fraudulent misrepresentation in Count IV.

Now the matter is before the court on defendant's motion for summary judgment on all counts (Doc. 22). For the reasons set forth below, defendant's motion for summary judgment is granted to the extent that Count II is dismissed in part and is denied as to the remaining counts.

## I. Background[2]

Prior to September 8, 1998, plaintiff was employed by Bill Lane, an independent contractor, who, in turn, had a contract with defendant, to drive a straight-truck delivery route five nights each week from Gardner, Kansas to Springfield, Missouri. On the evening of September 8, 1998, however, plaintiff was approached by defendant's agent, Rick Hanna, as plaintiff was preparing to leave on his route. Mr. Hanna informed him that Mr. Lane's contract had been terminated. Mr. Hanna then asked plaintiff if he would be interested in retaining the route directly as an independent contractor. Mr. Hanna described the arrangement as a three-year, $125,000 per year contract. Plaintiff would be required to pay for his own fuel and pager, and would lease the straight-truck which he had been driving for Mr. Lane from defendant. Plaintiff orally accepted the offer. Mr. Hanna then went into his office and retrieved a written contract, which he presented to plaintiff for his signature. Plaintiff began to read the contract, but was stopped by Mr. Hanna who insisted that there was no time for plaintiff to read it; Mr. Hanna directed plaintiff to either sign the document immediately and start his route or leave the job. Expressing concern about signing a document without "knowing what was in it," plaintiff asked Mr. Hanna to "rundown what's in it." J. Hermelink Depo. at 24. Mr. Hanna responded by reciting the terms of the oral agreement previously discussed. Mr. Hanna also told plaintiff that he would receive a copy of the written contract with his next pay check. Plaintiff initialed each page of the contract and signed it, then departed on his route.

Over the next few months, plaintiff drove the route without incident, even though defendant had never provided him a copy of the written contract. In December 1998 or early January 1999, however, plaintiff learned that the Springfield route would be modified to require a tractor-trailer rig. Mr. Hanna informed him that, in order to maintain his route, he would have to purchase a tractor-trailer and obtain a Class A commercial driver's license. Plaintiff began searching for financing which would enable him to purchase the tractor-trailer, but found that potential lenders were unwilling to assist with the purchase until they saw a copy of plaintiff's contract with defendant. Plaintiff

---

1. In addition, plaintiff seeks damages in both Count I and Count II for the allegedly wrongful withholding of monies from plaintiff's pay checks. Defendant has not moved for summary judgment on this issue.

2. In accordance with the summary judgment standards set forth below, the following facts are either uncontroverted or are presented in the light most favorable to plaintiff as the non-moving party.

asked Mr. Hanna for a copy of the contract daily, but the contract was not produced. Without a tractor-trailer, plaintiff was unable to take the driving portion of the test for a Class A commercial driver's license.

On Friday, February 5, 1999, Mr. Hanna told plaintiff that it would be his last day because a tractor-trailer team would start the new route on the following Monday. When plaintiff again asked for a copy of the written contract, Mr. Hanna responded that the contract had just been found and provided plaintiff with a copy. After reviewing the document, plaintiff discovered that it contained substantially different provisions from the oral agreement entered into by the parties. Plaintiff filed this suit on August 3, 1999.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Choice of Law

As an initial matter, the court must determine what law governs plaintiff's claims. A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, the court must look to Kansas law to determine which state's laws should be applied to each claim.

In Count I of his complaint, plaintiff seeks reformation of the written

contract. The written contract contains an express choice-of-law provision whereby the parties' rights and obligations under the contract are to be construed "in accordance with the laws of the State of Missouri." Contract, Pl's Ex. A at ¶ 10. The court applies the forum state's rule regarding the enforceability of a choice of law provision. *See Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1360 (10th Cir.1990). Kansas courts generally give effect to such provisions if the forum selected bears a reasonable relation to the contract at issue. *See National Equipment Rental, Ltd. v. Taylor,* 225 Kan. 58, 587 P.2d 870, 873 (1978); *see also Atchison Casting Corp. v. Dofasco, Inc.,* 889 F.Supp. 1445, 1455 (D.Kan.1995); *Altrutech, Inc. v. Hooper Holmes, Inc.,* 6 F.Supp.2d 1269, 1273 (D.Kan.1998). Implicit in the holdings of cases applying Kansas law to give effect to contractual choice of law provisions, however, is the premise that the choice of law provision was freely entered into by the parties. *See, e.g., National Equipment Rental, Ltd.,* 587 P.2d at 873 (holding that the "Parties had a right to *agree*" that New York law would govern their disputes arising out of the contract) (emphasis added); *Equifax,* 905 F.2d at 1360 (holding that "the parties themselves have *agreed*" to a choice of law provision) (emphasis added); *SBKC Service Corp. v. 1111 Prospect Partners, L.P.,* 153 F.3d 728, 1998 WL 436579, *2 (10th Cir. July 30, 1998) ("The Kansas choice of law rules honor an *effective* choice of law made by the contracting parties.") (emphasis added). The premise of plaintiff's reformation claim, in contrast, is that the written contract contained provisions which were not agreed upon by the parties. One such provision was the choice of law provision. Since the parties dispute whether the written choice of law provision was freely entered into, the court does not believe that Kansas courts would apply the provision to plaintiff's reformation claim.[3] When Kansas courts do not give effect to choice of law provisions, they apply the doctrine of *lex loci contractus. See Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 685 P.2d 321, 324 (1984). Under this doctrine, the law of the state where the contract was made controls. *See id.* In the case at bar, the facts are uncontroverted that the parties entered into the independent contractor agreement at defendant's place of business in Gardner, Kansas. Therefore, the court applies Kansas law to plaintiff's claim for reformation.

■ Plaintiff's second claim alleges that, even if the court finds that the written contract accurately depicted the parties' agreement, defendant nevertheless was in breach. Under this alternative claim, plaintiff is asking the court to enforce the contract as written. As discussed above, the written contract contained a clause mandating that Missouri law be applied to any disputes between the parties, and Kansas courts give effect to such clauses if they are freely agreed upon by the parties. To the extent that plaintiff presents his breach of written contract claim as an alternative to his reformation claim, in which he asks the court to find that the parties did not agree to the choice of law, the court will give effect to the choice of law provision as written. Accordingly, the court will apply Missouri law to plaintiff's claim for breach of the written contract.

■ With respect to plaintiff's tort claims for negligent and fraudulent misrepresentation, Kansas applies the substantive law of the state in which the tort occurred, that is, the state where the wrong was felt. *See Ling v. Jan's Liquors,* 237 Kan. 629, 634–35, 703 P.2d 731 (1985). When a plaintiff alleges financial injury, the court looks to the law of the state in which the plaintiff felt that financial injury. *See Steele v. Ellis,* 961 F.Supp. 1458, 1463 (D.Kan.1997) (fraud claim governed by law of state where plaintiff resides); *Lawrence–Leiter & Co.*

---

**3.** In any event, the question appears academic, as Missouri law and Kansas law governing reformation is the same in all material respects.

*v. Paulson,* 963 F.Supp. 1061, 1065 (D.Kan. 1997) (defamation claim governed by law of plaintiff's domicile); *St. Paul Furniture Mfg. Co. v. Bergman,* 935 F.Supp. 1180, 1187 (D.Kan.1996) (tortious interference claim governed by law of plaintiff's residence). For example, when a person sustains a financial loss due to misrepresentation, "the place of wrong is where the loss is sustained," not where the misrepresentation is made. *Raymark Indus., Inc. v. Stemple,* 714 F.Supp. 460, 464 (D.Kan. 1988) (citing Restatement of Conflicts § 377 n. 4). Thus, the law of the state where the effects of a misrepresentation were felt, the state in which the plaintiff resides, controls. *See Seitter v. Schoenfeld,* 678 F.Supp. 831, 836 (D.Kan.1988). Here, it is undisputed that plaintiff resides in Jackson County, Missouri. Thus, the court will apply Missouri law to the tort claims alleged in Counts III and IV of the Complaint.

## IV. Discussion

Defendant seeks summary judgment as to each of the counts charged in plaintiff's complaint. As explained below, the court rejects defendant's motion as to Counts I, III, and IV. As to Count II, however, the court agrees with one of defendant's three arguments and grants partial summary judgment on plaintiff's breach of contract claim.

### A. Count I: Reformation of Contract

In Count I of his complaint, plaintiff seeks reformation of the written contract between the parties, based on the theory that he was fraudulently induced to affix his signature to the document. Reformation is an equitable remedy which permits the court to amend a written contract when, due to fraud or mistake, the written manifestation of the parties' agreement does not represent the parties' actual agreement. *See Funkhouser Equipment Co. v. Carroll,* 161 Kan. 428, 168 P.2d 918, 922 (1946); *Morrison v. Jack Simpson Contractor, Inc.,* 748 S.W.2d 716, 717 (Mo.

Ct.App.1988). While the court may reform the document to reflect the parties' agreement, the court may not "make a new contract or supply terms upon which the minds of the parties have not met." *Anco Const. Co., Ltd. v. City of Wichita,* 233 Kan. 132, 660 P.2d 560, 562 (Kan.1983); *see also Morrison,* 748 S.W.2d at 717.

While defendant agrees with these general legal principles, it seeks summary judgment on plaintiff's reformation claim on two related grounds. First, without elaboration, defendant asserts that reformation is not appropriate in this case because plaintiff is asking the court to make a new contract, the terms of which the parties have not agreed to. Presumably, defendant is basing its argument on its position that the written contract accurately reflected the parties' agreement; thus, a reformed document would necessarily be a "new contract." Plaintiff, however, has presented evidence that the parties agreed to a three year contract in which defendant would compensate plaintiff $125,000 per year, less deductions for agreed upon expenses, and asks the court to reform the written contract to reflect such an agreement. *See* J. Hermelink Depo. at 19–20, 23–24. At the summary judgment stage, the court must view disputed issues of fact in plaintiff's favor. In viewing the evidence before it in the light most favorable to plaintiff, the court finds that the written contract does not reflect the parties' agreement. Thus, if the court reformed the written document, the court would not, as defendant suggests, be inherently creating a new agreement. Defendant's first argument fails.

Next, defendant asserts that reformation is not a proper remedy because "[e]ven if the Court were to grant plaintiff's request for reformation and add the alleged oral promises to plaintiff's Contract, plaintiff would not be entitled to commissions for deliveries he did not make under the terms of the Contract." (Doc. 22 at 14). Again, defendant's argument is premised on the basis that the written

contract consists of the terms agreed upon by the parties, in this instance the terms giving defendant discretion to notify plaintiff of available deliveries and basing plaintiff's compensation on the deliveries made. The premise of plaintiff's reformation claim, however, is that the parties never agreed to such terms. Plaintiff has presented evidence that the parties instead agreed that defendant would pay plaintiff $125,000 per year if plaintiff drove the Springfield, Missouri delivery route, and that the parties did not discuss limitations as to the number of deliveries performed. *See* J. Hermelink Depo. at 24. If this evidence is viewed in the light most favorable to plaintiff, plaintiff would indeed be entitled to damages resulting from his termination. Thus, the court finds that this case is of the type in which reformation could be a viable remedy if plaintiff is successful at trial.

In fact, the Kansas Supreme Court has discussed the appropriateness of reformation in a case factually on point with this one. In *Myers v. Fleetwood Farms, Inc.,* defendant's agent approached plaintiff and orally stated that if plaintiff would feed and board defendant's cattle for the winter, defendant would pay plaintiff 34 cents per each pound gained by the steers. 176 Kan. 508, 271 P.2d 257, 258 (1954). Plaintiff orally accepted the offer. *See id.* Some time later, defendant's agent returned to plaintiff's farm and informed plaintiff that defendant required that the agreement be reduced to writing. *See id.* at 259. The agent presented plaintiff with a document which he represented as containing the terms of the parties' oral agreement. The agent "urged the plaintiff to sign the same immediately without reading the same," stating that he had to leave to catch an airplane. *Id.* Plaintiff filed suit seeking reformation when he discovered that the written contract contradicted the parties oral agreement in that it contained a complicated formula for computing the contract price, rather than a straight 34 cents per pound gained. *See id.* at 262. Arguing that the plaintiff's signature on the written contract bound the plaintiff to its terms, even though plaintiff did not read it, defendant filed a demurrer. The court rejected defendant's argument and held that parol evidence could be introduced to allow for reformation. *See id.* at 263. The court stated:

> [L]iability on written instruments may be avoided, or such written instruments may be reformed and enforced in accordance with an antecedent oral agreement, when it is made to appear that the party executing the written agreement without reading the same was deceptively or fraudulently induced to believe that the written agreement contained all of the terms and conditions of the antecedent oral agreement.

*Id.* (quoting *Cox v. Pabst Brewing Co.,* 128 F.2d 468, 471 (1942)). *See also, Sparks v. Sparks,* 388 S.W.2d 508 (Mo.Ct. App.1965) (holding that parol evidence could be admitted to reform a written contract entered into by fraud, even though the plaintiff had signed the contract without reading it).[4]

---

4. In a separate section of its motion, defendant raises the argument that parol evidence cannot be used to contradict the parties' written agreement. (Doc. 22 at 3–6). In support of its argument, defendant cites solely cases in which reformation was not sought as a remedy. *See, e.g., Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 360 P.2d 23; *Bank of Kirksville v. Small,* 742 S.W.2d 127 (Mo.1987) (en banc). As discussed in *Myers* and *Sparks,* however, the fraud exception to the parol evidence rule permits the admittance of parol evidence to show the actual agreement of the parties, such that the court may vary the terms of the written contract to comport with such agreement. *Myers,* 271 P.2d at 263; *Sparks,* 388 S.W.2d at 515–516. *See also, Albers v. Nelson,* 248 Kan. 575, 809 P.2d 1194, 1197 (1991) (holding that when evidence of fraud is presented, "parol evidence may be admitted to vary the terms of the written instrument."); *Ortbals v. Director of Revenue,* 871 S.W.2d 435, 437 (Mo.1993) (en banc) ("[T]he parol evidence rule precludes oral evidence to contradict the terms of an unambiguous and complete written instrument *absent fraud.*") (emphasis added, quota-

As in *Myers*, plaintiff alleges that defendant's agent presented him with a written document which the agent represented as containing the terms of an agreement which the parties had previously reached. In both cases, the agent urged the plaintiff to sign the document immediately, without reading it. Moreover, just as the written contract in *Myers* required a "complicated" formula for computing the contract price, rather than the "straight" price upon which the parties had orally agreed, the written contract at issue here contains a "complicated" formula for calculating plaintiff's compensation based on the deliveries plaintiff made, rather than the "straight" $125,000 price upon which the parties had allegedly orally agreed. Based on these similarities, it is very clear that *Myers* guides the court to consider reformation as a possible remedy if plaintiff is successful at trial. Defendant's motion for summary judgment as to Count I is therefore denied.

## B. Count II: Breach of Contract

██ As an alternative to his claim for reformation, plaintiff alleges that defendant breached the terms of the contract as written. Plaintiff notes that the contract provides that it shall be valid for one year and that defendant did not follow the provisions allowing for early termination upon giving fourteen days written notice.[5] Defendant argues, however, that the court should enter summary judgment on this claim in defendant's favor for three distinct reasons. While the court denies summary judgment based on the first two reasons espoused, the court finds merit in defendant's third reason and ultimately grants partial summary judgment on Count II in defendant's favor.

██ First, defendant asserts that the uncontroverted facts demonstrate that

plaintiff was aware in January 1999 that his route would be changing, such that he would be required to drive a tractor-trailer rather than a straight-truck. Despite this knowledge, defendant argues, plaintiff failed to acquire a tractor-trailer rig and the necessary commercial driver's license to accommodate the change. This failure constituted a default which entitled defendant to terminate plaintiff's contract without written notice. Plaintiff correctly points out that this is not necessarily so. Even if the contract gave defendant the right to require plaintiff to operate a tractor-trailer on the route, the doctrine of prevention could preclude defendant from asserting plaintiff's breach. "It is a general principle of contract law that if one party to a contract, hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused." Richard A. Lord, 13 Williston on Contracts § 39:3 at 516. The party that hinders the other's performance "may not avail himself of the nonperformance which he induced or occasioned." *Hillis v. Blanchard*, 433 S.W.2d 276, 279 (Mo.1968) (en banc).

Plaintiff has testified that he could not arrange financing to acquire a tractor-trailer without a copy of his contract with defendant. *See* J. Hermelink Depo. at 103–04. Plaintiff has also testified that he was unable to take the driving portion of the commercial driver's license examination without a tractor-trailer. *See* J. Hermelink Depo. at 99–101. Plaintiff did not know anyone willing to loan or lease a truck, and he was unable to acquire a truck because defendant refused to provide him with a copy of the contract. *See* J. Hermelink Depo. at 101–04. Defendant has not addressed this issue in its reply brief, nor has it otherwise disputed the applicability of the doctrine of prevention. Thus, in viewing the facts in the light most

---

tions omitted). Defendant's argument therefore fails.

**5.** Plaintiff further alleges that defendant breached the contract by wrongfully deduct-

ing certain expenses from plaintiff's pay checks. Defendant does not move for summary judgment on this issue, however.

favorable to plaintiff, defendant's wrongful refusal to provide the written contract, which plaintiff required for continued performance, would excuse plaintiff's failure to meet the new requirements. Defendant's motion for summary judgment on this ground is denied.

Second, defendant asserts that plaintiff is not entitled to any damages under the contract since, "[h]ad the Contract remained in force until its expiration, defendant would have elected not to use plaintiff since the vehicle requirements for the Southwestern Bell route had changed." (Doc. 22 at 10). Defendant bases his argument on the clause in the contract which gives defendant discretion to notify plaintiff of available deliveries. *See* Contract, Pl's Ex. A at 2. The court finds, however, that this argument is related to defendant's first argument involving plaintiff's failure to obtain a tractor-trailer and the necessary commercial driver's license. The court has concluded above that this issue is not appropriate for summary judgment.

The court finds, however, that the third reason asserted by defendant for summary judgment does entitle defendant to the entry of partial judgment in its favor. Defendant's final argument asserts that summary judgment should be entered on plaintiff's breach of contract claim because plaintiff is only entitled to recover damages which arose from defendant's failure to provide him fourteen days written notice of termination and "plaintiff did not suffer any actual damages related to defendant's failure to provide written notice." (Doc. 22 at 12). Although the parties have not cited, and the court has not found, any case law governing the limitation of damages arising from the failure of a party to give proper notice when terminating an independent contractor agreement, the court believes that this situation is factual-

ly analogous to the termination of an employment contract. An employee who is summarily discharged in violation of a provision in the employment contract requiring a specified period of written notice is allowed only to recover damages incurred by him or her during the notice period, rather than during the entire balance of the contract period. *See* 96 A.L.R.2d 272, § 3(b) (citing cases). This derives from the fundamental precept that a party which seeks to recover damages for breach of contract for the failure to give proper written notice has the burden of proving that those damages are the proximate result of the defendant's failure to give notice. *See Tile–Craft Products Co., Inc. v. Exxon Corp.*, 581 S.W.2d 886, 888–89 (Mo. Ct.App.1979). The proximate result of termination without the proper notice is being deprived of earning money during the notice period. Accordingly, plaintiff would only be entitled to recover damages incurred by him during the fourteen days following his improper termination.

The burdens which are placed on each party when a motion for summary judgment is filed were discussed in Section II above. Defendant met its initial burden by pointing out to the court plaintiff's lack of evidence demonstrating that he suffered injury as a result of defendant's failure to give him fourteen days written notice.[6] Thus, the burden shifted to plaintiff to set forth specific facts, identified by reference to evidence before the court and not solely to plaintiff's pleadings, of proximately caused damages suffered by him in the two weeks following his termination. In his response to defendant's motion for summary judgment, however, plaintiff is completely silent as to what damages he allegedly suffered during the notice period. Plaintiff has therefore wholly failed to meet his burden and the court enters partial summary judgment for defendant on

---

**6.** Plaintiff's theory of recovery, as articulated in the final pretrial order, is that he is entitled to the income which he would have earned over the remainder of the contract term.

Plaintiff does not attempt to present the court with a theory of the amount of damages which he incurred during the fourteen day notice period.

plaintiff's claim relating to the failure to give proper notice.

### C. Count III and IV: Misrepresentation Claims

In Counts III and IV of the Complaint, plaintiff claims that defendant either negligently or fraudulently misrepresented and failed to disclose material facts related to the parties' agreement, and plaintiff reasonably relied on those misrepresentations when entering into the agreement. Defendant argues that it is entitled to summary judgment on these counts on the theory that the alleged misrepresentations "contradict the terms of the written agreement and therefore cannot be used to alter the terms of the Contract based on the Parol Evidence Rule and in violation of the Statute of Frauds." (Doc. 22 at 3, 9). Defendant's argument is inherently flawed, however, because plaintiff does not ask the court to alter the terms of the contract in these counts.[7]

 Moreover, plaintiff's claims for fraudulent and negligent misrepresentation are tort claims, rather than contract claims to which the parol evidence rule could possibly apply. To establish fraudulent misrepresentation in the procurement of the written contract, plaintiff must present evidence of: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of its truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo.1987) (en banc). *See also O'Neal v. Stifel, Nicolaus & Co., Inc.*, 996 S.W.2d 700, 702 (Mo.Ct.App.1999)

(holding that fraud in the negotiation of an employment contract is a separate cause of action which can be brought in addition to a claim for breach of contract). To establish negligent misrepresentation, plaintiff must establish that: "(1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss." *Vickers v. Progressive Casualty Ins. Co.*, 979 S.W.2d 200, 204 (Mo.Ct.App. 1998). The parties have devoted little attention to the elements of either of these torts. While defendant raises the question of whether or not plaintiff's reliance on Mr. Hanna's representations was reasonable, defendant does so for the first time in its reply brief. The court will generally not consider arguments raised for the first time in the moving party's reply brief. *See State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (issue waived if not raised in opening brief); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir.1993) (generally, issues raised for first time in reply brief will not be considered). In any event, the court finds that questions of fact remain as to whether plaintiff's reliance was reasonable. For example, plaintiff has testified that he talked with Mr. Hanna daily and that when Mr. Hanna asked him to sign the contract without reading it, plaintiff did so because he "thought [Mr. Hanna] was a good guy and he was really helping me out and working with me. That's what I believed." *See* J. Hermelink Depo. at 23, 24, 37–38. As factual questions on the

---

7. To the extent that defendant's argument pertains to plaintiff's reformation claim, the

court has addressed it in Section IV.A above.

elements of plaintiff's tort claims remain, the court concludes that summary judgment is not appropriate and denies defendant's motion. At trial, plaintiff may present evidence, be it of oral statements or otherwise, to establish the existence of each of the elements of these tort claims.[8] *See e.g., Pinken v. Frank,* 704 F.2d 1019, 1023 (8th Cir.1983) (holding that parol evidence my be used to demonstrate fraud in the procurement of the instrument).

## V. Procedure as to Legal and Equitable Claims at Trial

At the final pretrial conference in this case, the court asked the parties to submit procedural suggestions for the trial of plaintiff's legal and equitable claims. In their suggestions, the parties agree that at the close of the presentation of evidence the court should rule on plaintiff's equitable claim for reformation of the written contract. If the court determines that the contract should be reformed, the parties agree that the court should determine the terms of the reformed contract and then instruct the jury to determine damages, if any, under the reformed contract, and to further render a verdict on plaintiff's legal claims. If the court finds for defendant on the issue of reformation, then the court should only instruct the jury to render a verdict as to the remaining legal claims. Because the parties are in agreement, the court will follow these suggested procedures at trial.

As to the limited problems that the parties identify as potentially arising from the above plan, the court finds that judicial economy is better served by addressing said problems if and when they arise. Thus, if defendant believes that any evidence, though admissible to plaintiff's equitable claim, is inadmissable to plaintiff's legal claims, defendant is directed to file a motion in limine addressing the issue. Moreover, the court foresees ruling on plaintiff's reformation claim at the close of the evidence. However, if the court is not prepared to rule at the close of the evidence, the court will give the parties an opportunity to address their related procedural concerns at that time.

**IT IS ACCORDINGLY ORDERED** that defendant's motion for summary judgment (Doc. 22) is granted in part and denied in part. Specifically, defendant's motion is granted as to Count II to the extent that plaintiff seeks damages for failure to give proper notice. Defendant's motion is otherwise denied.

**IT IS SO ORDERED.**

---

**8.** Defendant cites two Kansas cases, in which the plaintiffs had read the written agreement and recognized that it contained terms contradictory to the parties' oral agreement, for the proposition that oral promises which contradict the written terms of an agreement my not be construed as fraudulent. *See Edwards v. Phillips Petroleum Co.,* 187 Kan. 656, 360 P.2d 23, 27 (1961); *Flight Concepts Ltd. Partnership v. Boeing Co.,* 38 F.3d 1152 (10th Cir.1994). First, this case is distinguishable from those cases, as here plaintiff did not know that the document that he was allegedly induced to sign contained provisions which contradicted the parties' oral agreement. Moreover, the very statements which plaintiff claims were fraudulent were those by Mr. Hanna representing that the written contract contained the same terms upon which the parties had orally agreed.